STATE ex rel. HASBROUCK vs. THE CITY OF MILWAUKEE.

*Mandamus.* — *Powers and duties of municipal corporations, as to levying taxes to pay judgment.*

1. Where a city was authorized to build a harbor, issue its bonds for the price, and raise money by taxation to pay the interest and principal thereof as they should become due, but, on its failure to issue the bonds, the contractor obtained a money judgment for the amount, and the city had no property on which execution could be levied: *Held*, that the city council had the power, and would be compelled by *mandamus*, to levy and collect a tax to pay such judgment.

    COLE, J., rests the decision mainly upon a provision in the charter subjecting all the property of the city to taxation for the support of the city government and the "payment of its debts and liabilities," and the acts which authorized the city to construct the harbor and thus create a liability therefor; holding that any limitation in the charter upon the power of the council as to the amount and objects of taxation could not affect a subsequent grant of authority to incur the liability, and that the grant of power to issue bonds, etc., was merely *additional* to the power already existing to raise money by taxation to meet such liability.

    DIXON, C. J., holds that the power to levy a tax to pay for the harbor was conferred by the acts authorizing its construction; that no default of the city or subsequent act of the legislature could deprive the contractor of the benefit of such power; but that the city, by compelling the plaintiff, through its default, to obtain a judgment, could hasten the period within which the power must be fully exercised.

    PAINE, J., dissents.

2. Whether a power in a municipal corporation to contract a debt necessarily carries with it the power to raise money by taxation for its payment is not here decided. DIXON, C. J., is of the opinion that it does, where that is the only means which the debtor has of enforcing payment.

3. An alternative *mandamus* may properly run to the mayor and common council of a city by their titles of office, without any allegation or specification as to the names of the persons who hold the respective offices; and the peremptory writ, if granted, will run in like manner to the persons who then hold those offices.

The charter of the city of Milwaukee (enacted in 1852) in its fifth chapter, relating to "finances and taxation," provided that the common council might annually levy a tax upon all the property in said city subject to taxation, not exceeding one per cent. per annum, to pay off the then existing indebtedness of the city until such indebtedness should be finally extinguished; and might levy a further tax, not exceeding three-fourths of one per cent., to defray the current expenses of the city. It further provided for the levy of taxes in each ward, to pay off certain ward debts and to defray current ward expenses. The first section of chapter eight declares that "all property, real or personal, within the city, except such as may be exempt by the laws of this state, shall be subject to taxation for the support of the city government, and the payment of its debts and liabilities." The remainder of the chapter prescribes the manner of assessing, levying and collecting taxes. In 1853, the mayor and common council were empowered, by an act of the legislature, to issue bonds of the city to the amount of $50,000, running not less than ten nor more than twenty years, and bearing interest at seven per cent., to raise money for the construction of a certain harbor in said city. In 1856, the mayor and council were empowered to issue bonds for that purpose, amounting with those previously authorized to $140,000, of which $25,000 were to be reserved for improving the entrance to said harbor, etc.; and in 1857, they were authorized "to issue such an amount of bonds as may [might] be necessary to complete the harbor." The harbor having been completed by plaintiff, he subsequently brought an action against the city for a balance alleged to be due him, and for which the city refused to issue to him its bonds. A judgment for the defendant on demurrer to the complaint, was affirmed by this court at the June term, 1860. 13 Wis. 37. After the cause was remitted, the judgment was vacated on plaintiff's motion, and he was permitted to file an amended complaint.

In 1861, an act was passed by the legislature, approved March 19 (Laws of 1861, ch. 87), which authorized the city of Milwaukee to issue new bonds, as follows: 1. For re-adjusting its bonded debt incurred for strictly municipal purposes, and of retiring all its outstanding bonds, except those issued in aid of railroads; the amount limited to $825,000. 2. For the purpose of funding and retiring all city orders, etc., issued prior to February 1st, 1867, and all judgments then existing against the city, and all claims against it theretofore acknowledged and liquidated (except bonds and coupons thereon), to an amount not exceeding $320,000. These bonds were to run thirty years, and bear interest at *five* per cent. A tax to pay the annual interest on them, and create a sinking fund for the purpose of paying the principal when due, was also authorized. Section 12 of the act provides as follows: "The bonds issued under this act shall contain a covenant to the effect that said city will issue no bonds except under or consistently with this act, until the aggregate amount of bonds issued under this act, and outstanding, shall have been reduced to $500,000 or under." The plaintiff subsequently recovered a judgment for $73,000 damages, which was reversed in this court, at the June term, 1863, and the cause remanded for a new trial. 17 Wis. 266. The complaint was then amended and plaintiff recovered a judgment in November, 1865, for $141,023.21 and costs, which was affirmed by this court at the June term, 1866. 21 Wis. 217. While the cause was pending, an act was passed (ch. 268, Pr. and L. Laws of 1866), which empowered the common council of Milwaukee to annually levy a tax for general city purposes in amount not exceeding $100,000 in any one year; *provided*, that this should not affect the powers and duties conferred upon said council by ch. 87, Laws of 1861, above cited. In April following an act was passed (ch. 413, Pr. and L. Laws of 1867), which amends the act of 1861,

by providing that the bonds, not exceeding $320,000, authorized by the second subdivision of the first section of that act, as above cited, might be issued, not only for the purposes previously named, but also "for the purpose of satisfying any judgment rendered against the city for any indebtedness which accrued prior to February 1st, 1861."

In 1867, plaintiff obtained an alternative writ of *mandamus* from this court, addressed to the city of Milwaukee and the mayor and common council thereof, commanding them to pay plaintiff's judgment, *or* provide for the payment thereof, by issuing bonds, as provided in the acts of 1853, 1856 and 1857, above cited, and raise the money to pay the same, *or* "levy and collect a tax to pay the same;" or that they show cause, etc. This writ was quashed, on respondent's motion, at the September term of this court, 1867, because it did not specify the precise duty to be performed; but leave was granted the relator to amend it.    22 Wis. 297. The writ was thereupon amended, so as to command said mayor and council to levy and collect a tax to pay the relator's judgment, or show cause, etc.; and it was re-filed February 3, 1869.   As ground for this relief, the writ recites the acts of the legislature of 1853, 1856 and 1857, above cited; the construction of the harbor by the relator under his contract, etc.; the recovery of said judgment in his favor, and that the same remains in full force, and the whole amount thereof with interest, etc., due and unpaid; that said city has no money, funds or property applicable to the payment of said judgment, or subject to levy and sale on execution; that prior to the time provided by law for the assessment for levy and collection of taxes in said city for the year 1867, to wit, on the 5th of December, 1865, and 13th of May, 1867, the relator demanded of the mayor and common council to provide means for the payment of said judgment, which they refused, and also demanded that said city,

through its proper officers, levy and collect a tax suffi-
cient to pay such judgment, which demand said city has
neglected and refused to comply with; and that on the
26th of October, 1867, the relator demanded of the
treasurer of said city payment of said judgment, but
he refused such payment.

The respondents moved to quash the writ, on the fol-
lowing grounds: 1. That thereby no duty was charged
upon the city and its mayor, or either of them, which
could by law be performed by them, or either of them,
and that they were unnecessary parties to the proceed-
ing. 2. That it did not appear from the writ who com-
posed the common council of said city, nor were any
persons therein named as members of it. 3. That it did
not appear upon the face of the writ that the respond-
ents had ever been required or requested by the relator
to issue bonds as required by the acts of the legislature
therein recited, or that respondents, or either of them,
had ever refused to comply with any demand in that
behalf. 4. That the writ demanded too much, and more
than the relator was entitled to, in case he should be
deemed entitled to any thing, in this, that it demanded the
collection by respondents of the tax, as well as the levy
thereof. 5. That it appeared upon the face of the writ
that it was not within the power of the respondents, or
either of them, to collect the tax which they were therein
commanded to collect. 6. That it appeared on the face
of the writ that if any duty was charged upon respond-
ents, or either of them, in respect to said judgment, that
duty was to issue bonds, and not to levy a tax for the
payment of the debt. 7. That it appeared on the face
of the writ that it was not within the powers of the re-
spondents, any or either of them, to levy or collect a tax to
pay said judgment. 8. That it appeared on the face of
the writ that said acts of the legislature did not author-
ize the levy of a tax to pay the said judgment, and par-
ticularly that they did not authorize the levy of such

tax at the time of the alleged demand and refusal to levy the same. 9. That the writ was otherwise defective and insufficient.

While the motion to quash was pending, viz., on the 10th of March, 1869, an act of the legislature was approved (ch. 432, Pr. and L. Laws of 1869), by which the common council of Milwaukee were authorized to levy and raise, by taxation upon the taxable property in said city, for the year 1869, a tax "for general city purposes," not to exceed $120,000, and various amounts for other purposes, not important here; while, for the purpose of paying the relator's judgment, they were empowered to levy and raise by taxation, in that year, and annually thereafter until said judgment should be fully paid, the sum of $30,000.

*D. G. Hooker*, City Attorney, for the motion:

1. The writ cannot be issued under any authority conferred by the acts of the legislature mentioned in the relation. (1) Those acts authorize the creation of a debt only by issuing bonds. They were not passed for the purpose of authorizing the doing of the work. (2) They do not purport to authorize the levy of a tax to pay for doing the work, but only to pay interest on the bonds, and the principal at their maturity. Officers of a municipal corporation cannot levy a tax, except by express authority of the legislature. Blackwell on Tax Titles, 196, *et seq.* (3) These acts were repealed by subsequent legislation, except so far as they operate as a contract between the city and the holders of the bonds. There is no contract between the city and the relator to levy a tax. 4 Wallace, 535. (4) The time for the maturity of the bonds had not arrived at the time of filing the relation. 2. The authority to do the work does not carry with it, by implication, authority to levy a tax, as commanded by this writ. (1) The acts relied on do not authorize the doing of the work, except by implication. (2) They provide another way of payment. (3) Ch.

413, Pr. and L. Laws of 1867, and ch. 432, Pr. and L. Laws of 1869, also provide other ways of payment. (4) The doctrine contended for by the relator, if it exists at all, is applicable only where the debt is payable from the general fund; and the amount authorized to be raised by Milwaukee for general city purposes is only $100,000 —less than the judgment. (5) That doctrine, as applied to this case, would conflict with sec. 3, art. 11, of the state constitution, which requires the legislature to restrict the power of cities to tax. The legislature have done so in the case of Milwaukee. (6) The act of 1857, authorizing the issue of an *unlimited* amount of bonds, is void. *Foster v. Kenosha*, 12 Wis. 616. But the relator must rely upon that act for authority to create the debt, or part of it. (7) Where a debt is authorized to be created by a city for other than municipal purposes, there must be legislation expressly authorizing the levy of a tax, if the debt is paid by taxation. The Pennsylvania cases cited in support of the writ relate to the levying of taxes by *counties*, and not by *cities;* and the amount to be paid on the bonds was within the amount which the county was authorized to raise by taxation. 43 Pa. St. 400.

*Emmons & Van Dyke*, contra, contended that the power of the city to create the debt here in question, and the existence of the indebtedness, in fact, had already been adjudicated (13 Wis. 37; 17 id. 266; 21 id. 217); that where a specific power is conferred by the legislature upon a corporation, it may do any act necessary to the full exercise and complete execution of such power (*Mills v. Gleason*, 11 Wis. 470–492; *Mead v. Keeler*, 24 Barb. 20; *Jackson v. Brown*, 5 Wend. 590; *Smith v. Law*, 21 N. Y. 296; *Curtis v. Leavitt*, 15 id. 9–62; *People v. Mauran*, 5 Denio, 389; *Ketchum v. Buffalo*, 21 Barb. 294, and 14 N. Y. 356; *Ex parte Burnett*, 30 Ala. 461; *City of Lafayette v. Cox*, 5 Ind. 38; *Smith v. City of Madison*, 7 id. 86; *Kyle v. Malin*,

8 id. 34; *De Witt v. San Francisco*, 2 Cal. 289); and that, in particular, a power to create a debt implies the power to pay it, by resorting to the usual and only known means — taxation — to raise money to pay. *Bancroft v. Lynnfield*, 18 Pick. 566; *Allegheny City v. McClurkan & Co.*, 14 Pa. St. 81; *Copes v. City of Charleston*, 10 Rich. Law, 491; *Nill v. Jenkinson*, 15 Ind. 425; *Commonwealth v. Comm'rs of Allegheny*, 40 Pa. St. 448; *Comm. v. Comm'rs, etc.*, 37 id. 284–290; *Comm. v. Perkins et al.*, 43 id. 400–403. The mere change of form or evidence of the indebtedness, is no objection. 37 Pa. St. 237. The power to tax, having been given by the acts which authorized the debt to be contracted, could not be taken away by subsequent legislation. As to the effect of the later acts limiting the annual taxation for other specific purposes, counsel referred to the Pennsylvania cases above cited, and also *Bronson v. Kinzie*, 1 How. 311, and *Van Hoffman v. City of Quincy*, 4 Wall. 535. To the point that where there is a *power* to tax it becomes a *duty*, which will be enforced by *mandamus* in favor of parties who have a right to have it exercised, they cited *Comm. v. Council of Pittsburgh*, 34 Pa. St. 496.

COLE, J. This motion raises some questions not free from difficulty. It is a motion to quash an alternative writ of *mandamus*, which has been issued by this court, directed to the mayor and common council of the city of Milwaukee, commanding them to proceed and levy and collect a tax sufficient to pay the judgment mentioned in the relation. The liability of the city and the duty of its authorities to proceed and raise the money to discharge this judgment are matters not longer open to controversy. It must be assumed that the judgment is a just and equitable one, and the obligation to pay it is of the highest character.

The relation states, what indeed was already within

the judicial knowledge of the members of this court, that the city was fully authorized to make this improvement by various acts of the legislature, and that it was likewise empowered to issue such an amount of its bonds as might be necessary to raise the means to pay for the work.    These acts further make it the clear duty of the mayor and common council to provide for the payment of the interest and principal of the bonds issued for the construction of the harbor, and ample authority is given to raise means for that purpose by a tax upon the property of the citizens subject to taxation.    It is also stated in the relation that the city has no money or property applicable to the payment of the judgment or subject to sale upon execution ; and that the mayor and common council, although hitherto requested so to do, have neglected and refused, and still do neglect and refuse, to levy any tax for that purpose.    So it would seem that if this motion to quash prevails, the relator will be utterly without any legal remedy to collect his judgment, and must wait the pleasure of the city authorities to pay him the amount which the courts have adjudged due him.    Such an entire failure of justice would certainly be a reproach to the law of this state.    But it is said, in the motion to quash, that no duty is charged in the alternative writ upon the mayor and common council, which can by law be performed, and that it appears upon the face of the writ that it is not within the power of the mayor and common council to levy and collect a tax upon the taxable property of the city to pay the judgment of the relator.    This, in substance, embraces the first, fifth and seventh grounds, relied on in the motion to quash.

Have, then, the mayor and common council authority to levy a tax to pay the relator's judgment ?  If they have, it will not be denied that it is their duty to do it. It is said in support of the motion, that the officers of a municipal corporation possess no power to levy taxes not authorized by its charter, and that there are no

special provisions in the city charter as to the enforcement of a judgment against the city of Milwaukee. This same point was taken in the case of *The State ex rel. Sherman v. The Common Council of the City of Milwaukee*, 20 Wis. 87, and in effect overruled. In that case the relator applied for a *mandamus* directed to the authorities of the city of Milwaukee, commanding them to proceed "to levy, assess and collect a tax in the manner in which other taxes are collected in said city," to pay his judgment. A motion was made to quash the alternative writ, upon the ground that the common council had no power by law to levy a tax to pay the judgment, and was only authorized to raise money by taxation to the amount, and for the specific purposes, prescribed in various provisions of the charter and amendments thereto. The motion to quash was overruled. That case, if it is to stand, is clearly decisive of the objection taken here. Whether Mr. Justice DOWNER relied upon the general principal that a writ of *mandamus* lies to compel a corporation or its officers to do many acts which, by law or by virtue of official station, they are bound to do, such as levying a tax to pay a judgment against the city where the money to pay the same can be provided in no other way, and where the creditor has no other remedy, is not stated in the opinion. But I think that well-established principle may, without violence, be applied here. By the charter in force when the contract for constructing the harbor was entered into, all property, real and personal, within the city of Milwaukee, except such as was exempt by the laws of the state, was subject to taxation for the support of the city government and "*the payment of its debts and liabilities.*" Sec. 1, chap. 8, charter of 1852. And by thus making the real and personal property subject to taxation for the payment of the debts and liabilities of the city, did not the legislature contemplate that resort should be had to the

taxing power whenever necessary to raise money to discharge such obligations? I think it fair to assume that such was the intention of the legislature. The fifth section of the same chapter makes it the duty of the common council, by resolution, to levy such sums of money as may be required for the several purposes for which taxes are therein authorized to be levied, not exceeding the limitations prescribed. But those limitations prescribed in sections 4, 5, 6, chap. 5, would not restrict the power to raise taxes for a liability subsequently authorized. In view of these provisions in the charter, it seems to me that it might well be held that the city, when it entered into the contract for the construction of the harbor, could exercise the power of taxation to the extent necessary to meet a liability upon that contract. And if it could exercise such a power of taxation for that purpose, the power thus given cannot be withdrawn until the contract is satisfied. *Van Hoffman v. The City of Quincy*, 4 Wallace, 535. "Instances might be multiplied of the frequent resort to this writ, in England, to enforce the execution of official duties, especially of a fiscal nature involving the taxing power." *Commonwealth ex rel. Thomas v. Comm'rs of Allegheny Co.*, 32 Pa. St. 218; 34 id. 496. The counsel for the relator contends, that, when the legislature conferred upon the city the specific power to make the improvement, the city, under that grant, might do any act necessary to the full exercise and complete execution of the specific power granted; and that an authority to create the debt implies an obligation to pay it, and where no special mode of doing so is provided, it is also implied that it is to be done in the ordinary way, by the levy and collection of taxes. This is the language of the court in the cases of *Commonwealth ex rel. Armstrong v. The Commissioners of Allegheny*, 37 Pa. St. 277–290; *The Same v. Perkins et al.*, 43 id. 400–403. In those cases, however, and others to which we were referred,

the writ was applied for to compel a municipal corpo-
ration to make provision for the payment of interest and
principal due upon bonds issued by it in payment of a
subscription to the stock of a railroad company, and,
where the act authorizing the subscription had directed
that provision be made for the payment of the principal
and interest of the debt thus incurred by the assessment
and collection of a tax. But it is evident that it was not
necessary for the decision of those cases to decide that
an authority to contract the indebtedness by implication
carried with it the power to raise the means by taxation
to pay it. For the power to levy the tax was expressly
given in the act authorizing the creation of the debt.
Still this general proposition may be maintainable upon
the authorities, that, where a municipal corporation has
the power to contract the debt, it has, by necessary
implication, authority to resort to the usual mode of
raising money to pay it, which undoubtedly is taxation.
But, without relying upon that proposition here, it seems
to me more satisfactory ground to rest the case upon to
say, that as the charter, when the contract for construct-
ing the harbor was entered into, subjected the property
of the citizens to taxation for the payment of its debts
and liabilities, the legislature must have intended that
resort would be had to that mode of raising money when
necessary to meet its just obligations. It is true, the
several acts authorizing the construction of the harbor
empower the city to issue its bonds to raise money for
that purpose, and made it the duty of the mayor and
common council to provide for the payment of the prin-
cipal and interest of the bonds issued. But obviously
it was not the intention of these acts to abridge any
power of taxation already existing, If the city had the
authority, under its charter, to raise money by taxation
to meet a lawful debt, it was certainly not the design of
these acts to take it away. That power remained, and
the city might doubtless have provided for the payment

of a portion of the debt by taxation at once, without issuing its bonds therefor. Suppose the mayor and common council had deemed it for the best interest of the city to raise some portion of the money necessary to make the improvement by immediate taxation, could they not have levied taxes under the charter for that purpose? It seems to me that they might have done so. Issuing the bonds of the city was an additional mode of raising money for the work. But it did not exclude the use of the ordinary means of meeting debts and liabilities by taxation. So I am inclined to hold, that, under the provisions of the charter existing when the contract for constructing the harbor was entered into, the mayor and common council had authority to raise money by taxation to meet a debt or liability upon it. If so, it cannot be disabled from the exercise of this power, to the extent necessary to provide for the payment of the relator's judgment, and leave him without any remedy whatever.

I do not think that the second and fourth grounds relied on for quashing the alternative writ demand any special notice. If a peremptory *mandamus* should be finally granted, it would be directed to the mayor and common council, whoever they might be, commanding them to proceed and levy a tax sufficient to pay the relator's judgment.

The third and sixth grounds relied on in the motion resolve themselves really into the same objection. It is, that if the alternative writ charges any duty upon the mayor and common council, it is the duty of issuing the bonds of the city to pay the judgment, and that it does not appear that those officers have ever refused to perform that duty or been requested by the relator to issue the bonds. The counsel for the city failed to make his position clear upon this point. As I understand him, he argues that the act authorizing the city to re-adjust its corporate debt (chap. 87, Laws of 1861) repeals all

laws theretofore passed empowering the city to issue
bonds.   Concede that this is a correct view of that law,
and what power have the mayor and common council to
issue bonds to pay the judgment?   It is suggested that
possibly chapter 87 may be held invalid so far as it at-
tempts to affect the relator's right.   But I do not suppose
the relator has any right to insist upon being paid in
the bonds of the city.   It was undoubtedly the right
of the city when he completed the harbor, on or about
the first of January, 1858, to pay the amount due on
the contract in bonds.   This mode of payment it re-
served to itself by the contract.   It was a stipulation
for its own advantage, and not one particularly bene-
ficial to the contractor.   But the city, although it ac-
cepted the work, and, with the rest of the country, has
had the use and enjoyment of the harbor from that
time to this, declined and refused to pay in bonds the
amount then due.   It turned the relator over to his
action upon his contract.   The relator has recovered a
money judgment.   It seems to me rather bad grace for
the city to insist, after this delay — after refusing years
ago to keep and perform its contract and make payment
in bonds — that it should be permitted to discharge the
judgment in that manner now.   Such a rule of law or
morality would hardly be sanctioned in transactions be-
tween individuals.   I certainly see no ground for saying
that it is the right of the city to pay the judgment in its
bonds.   The relator asks no such relief.   And should
the mayor and common council attempt to issue bonds
in payment of the judgment, persons who became credit-
ors under the re-adjustment law of 1861 might complain
that such issue impaired their rights and diminished their
security.   See *Smith v. The City of Appleton*, 19 Wis.
468.   I therefore think the third and sixth grounds relied
on in the motion to quash, untenable.

In the above opinion I must be understood as express-
ing only my own views.   My brethren may not agree

with me in the grounds upon which the motion should be decided. I might have contented myself with relying upon the decision in *Sherman v. The Common Council, supra,* but I thought it due the importance of the questions involved to give some reasons why I thought the motion to quash should not prevail.

PAINE, J.  I suppose it to be settled law that a *mandamus* issues against public officers only to enforce the performance of some clear legal duty. It is also settled, that the officers of municipal and other corporations have no powers except such as are conferred by statute, not excluding, however, such implied powers as are necessary to the execution of those expressly granted. These principles are especially true in relation to proceedings to compel the levy and assessment of taxes.

The relator here seeks to compel the council to levy a tax to pay a judgment he has recovered against the city, of more than $140,000. It seems, therefore, that the only question is, whether there is any law making it their duty, or authorizing them, to levy such a tax. It is true, that the several acts authorizing the city to construct the harbor provided that it might issue bonds. and provide for the payment of the principal and interest by taxation. Those bonds might have run from ten to twenty years; so that, although they might have been so issued as that some of them would be now due, yet it is also true that they might have been so issued that none of them would be yet due. Those bonds were not issued, but, a dispute having arisen between the parties as to the amount due, the relator brought his action and recovered a money judgment for the entire balance unpaid, upon the default of the officers in issuing the bonds. I do not see how the power to levy taxes to pay the bonds, if they had been issued, can in any way be used to create a legal duty to levy a tax to pay the judgment. For as the bonds might have been

so issued that none of them would be yet due, it cannot be assumed that this would not have been done. It is, therefore, not like the case of a judgment on a bond already due, and for the payment of which the city was authorized to levy a tax. In such case it might well be said, that the mere merging of the bond in the higher security of the judgment did not prevent the exercise of the power of taxation for its payment. But here it cannot be assumed, that, if the bonds had been issued as contemplated by the acts authorizing the debt to be incurred, any power of taxation could as yet have been exercised for the payment of any thing beyond the annual interest. The relator having waived his right to compel the delivery of the bonds, and elected to recover a money judgment upon the alleged default of the city on the contract, must be held to have elected such judgment with the same force and effect as any other judgment against the city.

Is there any law providing in what manner a judgment against the city of Milwaukee may be collected? It is not denied that an execution might be issued, and the judgment collected, if the city had property liable to execution. But it is alleged here that it has none. And undoubtedly the usual modes of collecting judgments against municipal corporations is by the levy of a tax for that purpose. But this is the usual mode only because the law usually so provides. And it is conceded, that, in respect to the city of Milwaukee, there is no such provision. In *Crane v. Fond du Lac* (16 Wis. 196), this court held, that where there was no special provision in the charter of a city as to the mode of enforcing a judgment, it should be collected in the manner provided for the collection of judgments against towns. But in *Sherman v. Milwaukee* (20 Wis. 87), that decision was overruled. The result is, that there is no law providing for the enforcement of a judgment against the city. It is true, that, in the case last referred

to, the court sustained the application for the writ. And Justice COLE relies on that as decisive of this motion. But I cannot so regard it. It is true that the opinion in that cause, after removing the only legal authority for levying a tax to pay a judgment against the city, still assumes, without explaining upon what ground, that the council may be compelled to levy such a tax. But it is material to observe that in that case the judgment to be enforced was only a few hundred dollars. And as this was far below the limitation in the charter to the tax which the city was authorized to raise each year for general city purposes, it must have been assumed by the court in that opinion that a tax might be raised to pay that judgment under this general power, unless it was made to appear, by answer, that the city had already raised the whole amount authorized. I cannot construe in any other sense the last clause of the opinion, which suggests that if the city had no power to levy the tax it might show it by answer. In view of the uniform decisions that the charters of cities are public laws, of which the courts are bound to take notice, this clause cannot be held to have intended to require cities to plead the provisions of their charters in order to bring them to the attention of the court. It could only have meant that, inasmuch as the court could see by the charter that the city had power to levy a certain sum each year for general purposes, it would assume that it had power to levy enough to pay so small a judgment, unless it showed that the limitation had already been exhausted, a fact of which the court could not take notice.

If this is not the true ground upon which the decision in that case proceeded, then I am at a loss to know what it was.

But the judgment here involved exceeds the amount of the tax which the city is authorized to raise for general city purposes, under the law now in force; and

no provisions have been pointed out, that were in force at the time this debt was incurred, which would have sanctioned the raising of such an amount of tax for the purpose of paying such a judgment.

Justice COLE suggests, in his opinion, that the power to levy the tax asked in the case of *Sherman v. Milwaukee* might be derived from that provision in the charter which made the taxable property of the city subject to taxation for the support of the city government "*and the payment of its debts and liabilities.*" But that does not profess to enlarge the powers of the common council. It merely subjects the property to taxation for those purposes; but, in order to determine what taxes the council might levy, resort must be had to the other provisions of the charter specifically defining its powers. And although they might be such as to justify the court in assuming that the city might levy a tax to pay a judgment of $300, there have been none pointed out, and I have found none, which I think would justify the assumption that it had power to levy a tax to pay one of $140,000.

Nor do I think the power to levy this tax is one of the implied powers of the common council. To say that a general liability on the part of a municipal corporation to have judgment rendered against it creates an implied power to levy a tax to pay the judgment, irrespective of any statutory provision to that effect, would be carrying the doctrine of implied powers further than either the authorities or reason would warrant. It seems to me, therefore, to be a case of a judgment against a city, without any provision of law for its enforcement, other than the ordinary one of an execution. And if there is no provision of law authorizing a tax for its payment, it would seem difficult to say that the levying of such a tax was a clear legal duty which could be enforced by *mandamus*.

Under the decision of this court that the general law

providing for the collection of judgments against towns is not applicable to cities, it seems to be a *casus omissus*, for which I think the only remedy is by further legislation. I cannot think that, in the conceded absence of any specific legislation providing for the levy of a tax to pay such a judgment, it is the duty of the court either to overlook or attempt to supply the defect, and to hold upon general principles, that, inasmuch as the debt ought to be paid, and there is no way provided for its payment, therefore it will compel the council to levy a tax for that purpose.

The motion to quash should be granted.

DIXON, C. J. This is one of the cases argued during my absence from the bench at the present term. It has been with the utmost reluctance that I have consented to take part in the decision of any of them. I have done so only at the earnest solicitation of my associates, and because they thought it was proper. Still greatly doubting the propriety of it, I have yielded to their superior judgment, considered my objection overruled, and participated in the decision of several such causes, and, among others, of this. It has not been necessary for me to express my individual views in any of them, except this and one other ; in the other, because I could not concur in the decision made ; and here, by reason of the difference of opinion between my associates. In this case, also, I sat at the first argument, after which a re-argument was ordered, so that the questions presented are not new to me.

I very decidedly concur in the conclusion reached by Mr. Justice COLE ; and while I think his views of the law correct, I am still inclined to rest my judgment upon somewhat broader grounds. I think the power to levy and collect the tax to pay this judgment exists under the several acts of the legislature authorizing the city to incur the debt, for the non-payment of which the

judgment was rendered. Such power to raise money by taxation to meet the indebtedness was clearly conferred by those acts; and I think it was incompetent for the legislature afterward to take it away, so as to leave the creditor without a remedy. I am also of opinion that it was incompetent for the authorities of the city so to conduct themselves with respect to such indebtedness, or with respect to the contract out of which it arose and into which the city had lawfully entered, as to defeat or render inoperative such power of taxation, 'or to frustrate the ends of justice when the exercise of the power is invoked in aid of the creditor as his last and only means of redress. The city authorities, by their failure or refusal to perform the contract, might hasten the time when the power should be exercised, but they could not defeat or destroy it. The power was given, and the duty of exercising it imposed, for the benefit and protection of the creditor; and both constituted a part, and a most material part, of the obligation of the contract. If the municipal authorities failed or refused to execute and deliver the bonds payable at a future day, as by law they were authorized and by the contract bound to do, such failure or refusal was an election on their part, and on the part of the corporation which they represented, to consider the money due presently, or whenever the creditor should obtain judgment for the same. It was an election and assent on the part of the city that the power of taxation given to secure and enforce the payment of this same debt should be exercised at once for the payment of the judgment, however the term of credit might otherwise have been if this contract had been promptly fulfilled by the city. If the extended time for payment authorized by the acts and contract has not been given or obtained, it was, or must now be presumed to have been, the fault of the city itself, or, what is the same thing, of its officers; and I can never assent to the idea

that a municipal or any other corporation can take advantage of its own wrong thus to avoid the obligation of its contracts, or defeat the rights of its creditors. And should it possibly be suggested that the creditor was in any fault for not procuring the bonds to be issued, I answer, clearly not. He pursued the only remedy which was open to him. If a *mandamus* had been applied for to compel the execution and delivery of the bonds, or a bill in equity filed to enforce a specific performance of the contract, the objection would have been, that he had an adequate remedy by an action at law to recover damages for the breach; and such objection would have been valid, and must have prevailed. For these reasons, in brief, I think that the power of taxation not only exists by virtue of the several acts authorizing the city to incur the debt here in judgment, but that it can and must now be exercised to compel its payment.

But if I had not this plain ground to stand upon, namely, the power of taxation expressly given by the statutes authorizing the city to contract the debt, I should still hesitate long before holding that the creditor by judgment in such case had no remedy for its collection. I can hardly conceive it possible that such a state of things can exist under the constitution of this state, as I have had reason to observe on several occasions heretofore. *Phelps v. Rooney*, 12 Wis. 698; *Soutter v. Madison*, 15 id. 37, 38; *Bull v. Conroe*, 13 id. 237. The raising of money by taxation being the usual, and I may say the only, means by which the payment of such debts can be made or enforced, the power to tax in the ordinary methods, if not expressly given, would, as it seems to me, be most clearly and necessarily implied from the power to contract the debt itself, and would run with the debt, creating a continuous and irrepealable obligation and duty to exercise it so long as the debt or any part of it remained unpaid. Such appears to be the doctrine of the

Pennsylvania decisions upon this point, which are referred to in the opinion of Mr. Justice COLE. The doctrine appears to me sound, wholesome and just; but as the question is not in strictness involved here, I am not required to express any definite opinion upon it, and do not do so. If it be correct, then I am certainly correct in the position for which I contend, and the power to tax for the payment of this debt, having once been given by statute, still exists, and should, on the application of the creditor, be exercised as the last and only effectual means by which satisfaction can be obtained.

I think, therefore, that the motion to quash should be overruled.

*By the Court.* — Motion denied.