The opinion of the court was delivered by
DeBlanc, J.
In 1858, several draining districts were established-in the parishes of Orleans and Jefferson, and a Board of Commissionersi appointed for each of said districts, for the purpose of reclaiming the swamp lands therein situated. To defray the construction of the works, necessary to execute that projet, an assessment was to be levied by the commissioners, and .the payment of the assessed contribution was. secured by a first mortgage and privilege on the lands so situated.
*1372 Before 1877, plaintiff paid, for the intended drainage, twenty five •thousand five hundred ninety eight dollars and sixty one cents, the whole of the assessments levied upon the lands it owns in the first ■drainage district, and now seeks to recover back that amount, on the •grounds:
1. That the consideration for which it was paid has entirely failed.
2. That, by act No. 48 of the General Assembly of 1877, its lands 'have been excluded from the drainage districts and from the benefits of •drainage.
3. That — -by one of the provisions of the aforesaid act — all judgments obtained for drainage in the several districts herein mentioned, •and creating liens on the lands therein comprised, and all legal proceedings instituted for that object, have been annulled and canceled.
To plaintiff’s demand the city answered:
1st. By a general denial.
2d. That the assessments paid, and the re-imbursement of which was demanded, were all paid under a j udgment rendered in “ the matter ■of the Board of Commissioners of the Second Drainage District, by the 'Second Judicial District Court, which judgment was res jxidicata and a •perpetual bar to any reclamation.
3d. That plaintiff had voluntarily paid said assessments now reclaimed.
4th. That the judgment rendered in the matter of the New-Orleans Canal and Banking Company vs. City of New Orleans, No. 3375, of Fifth District Court for the Parish of Orleans and known in the Supreme ■Court as No. 4350, formed res judicata and was a bar to plaintiff’s ■demand.
5th. That plaintiff had never paid any part of its assessment to the city of New Orleans; but had paid all to the Board of Commis■sioners of Drainage for the First Drainage District, long before act No. :30, of 1871, had made the city officers the collectors of the “drainage tax,” and such payments had all been expended in drainage work.
6th. That the city of New Orleans was not authorized nor empowered by any law to raise money for, or to pay, such as the plaintiff’s •demand.
7th. That’ act No. 48, of 1877, was contrary to sections 105, 109 •■and 110 of the State constitutions of 1852, 1864 and 1868, respectively, and of section 3, article 6; article 5 of amendments of 1791; of section 10, of article 1, and section 1, of article 14 of the Constitution of the United States, in that it impaired the obligation of contracts and divested vested rights in this wise. That under act 30, of 1871, a large amount of drainage work had been done, in payment of which drainage •warrants had been issued; that subsequently, under act sixteen, of 1876, *1373 and pursuant to city ordinances, the city of New Orleans had purchased the franchises to do the drainage work and great quantity of machinery, boats, etc., for such purpose, for all of which it had paid in drainage warrants. 'That these warrants, to a very large sum, were issued on the faith of the drainage tax, were only payable therefrom. That the withdrawal of any part of the tax, the destruction of any of the sources whence it must be drawn or the loss of the security found alone in the judgments and liens obtained for the collection of the same, impaired the obiigaticin of such contracts and divested vested rights.
8th. That said act 48 of 1877, was further unconstitutional, because it destroyed uniformity and equality of the tax' or assessment, relieved many in the taxing district from the obligation they were bound to-share in common with all; imposed double taxation on those not so relieved and was partial legislation, all contrary to articles 123,124 and 118, of State constitutions of 1852,1864 and 1868, respectively, and the aforesaid articles of the constitution of the United States.
Section 2d, of act 48, regular session of 1877, is as follows;
“ That all judgments for drainage of said lands, judgments creating liens, and for assessments for drainage of said lands, and all legal proceedings pending therefor, be and they are hereby cancelled and annulled ; provided, that the benefits of this act shall not be invoked in favor of any land until the State and city taxes due thereon are paid: provided further, that all lands situated within the above described lines, and excluded by this act from, the drainage limits established under previous laws, and upon which drainage taxes or assessments have already been paid, shall hereafter be exempt from all future drainage assessments.”
By the act of 1858, No. 165, “ to provide for leveing, draining and reclaiming swamp lands in certain portions of the parishes of Orleans- and Jefferson,” three draining districts were established, and a Board of Commissioners for each district. The Board of Commissioners were invested with all the rights and powers necessary to drain the several districts. It was made their duty to cause plans of the sections or districts to be drained to be made and deposited in the office of the recorder of mortgages — to apply to a district court for a decree that each portion is subject to a first mortgage lien and privilege in favor of the Commissioners for such amount as may be assessed on the property for its proportion of drainage.
They were then authorized to levy an assessment upon the superficial square foot to defray the construction of the work. A remedy for its collection was given.
The first section of act No. 51 of 1869 provides, that the three drainage districts are consolidated, the property of the three draining dis *1374 tricts are transferred to tb.„e mayors of New Orleans, Jefferson Oity and •Carrollton and the police jury of the parish of Jefferson, left bank, and *’ all other property, such as maps, plans, tableau, all books pertaining to the business of said draining districts, all moneys and credits, deeds, mortgages and all other evidences of title to real estate and all assessments of taxes, etc., shall be turned over by the Commissioners of said drainage districts, to the Commissioner of Drainage whose appointment is hereinafter provided for.”
The second section provides for the appointment of Commissioner .of Drainage.
The draining of the several districts was and continues to be but one, a common and indivisible enterprise. Every canal, ditch or levee necessary to complete it, must be dug or built, not at'the costs of only a fraction, but at the costs of every fraction of each of said districts: otherwise, it might happen that those who have not, or who have the less contributed to the partial execution of the common enterprise, would alone benefit by the partly accomplished work paid for by others.
If, considering the projet an impracticable one, the Legislature had repealed every law providing for the drainage of lands in the parishes of Orleans and Jefferson, its action would not have amounted to a violation of the constitution, but the Legislature could certainly not select, within the limits of the districts which — for nearly twenty years— have been subjected to the burdens of that common enterprise, lands which shall and others which shall not continue to bear the already imposed, fixed and determined burdens, much less could it ordain and command that the mortgages and privileges which are — not an exclusive pledge of the State — but the pledge of the creditors of the several districts, and — indirectly at least — of those who have paid the assessed contributions, shall be remitted, cancelled and annulled.
Were it to the interest of the State, the city or those concerned in said enterprise, that the territorial limits of said districts should be reduced, that reduction could — in no way — authorize even the Legislature to distinguish between the lands embraced within the limits as originally fixed, to exclude a portion of said lands from the benefits of the proposed drainage, and to exempt the excluded portion from the charges and -liabilities actually incurred for work already done, determined and accepted. These liabilities and benefits must be borne and shared by all.
We unhesitatingly acknowledge — as contended by plaintiff’s counsel — that the whole of the expense of an improvement, may be imposed by the Legislature, not on merely the owners of the.property to be specially benefitted by the improvement, but on the whole of the corporation. This it can do, when the entire corporation is to be thereby *1375 benefitted — but we as unhesitatingly deny that the Legislature can — ■ lawfully — order, in any specified locality, a work of admitted and general utility to every portion of the same, and arbitrarily ordain that — to pay for the price of that public work — a tax shall be levied on exclusively the eastern section'of that locality.
It is manifest that so much of the second section of act No. 48 of the General Assembly of 1877, which provides “that all judgments for drainage of said lands, judgments creating liens and for assessments for drainage of said lands, and all proceedings pending therefor, be and ■they are hereby cancelled and annulled,” and so much of the first and •second sections of said act which exclude certain lands from the established limits of the drainage districts and exempt them from all future •drainage assessments, impair the obligation of existing contracts, destroy acquired rights and* violate the letter and spirit of our constitutions.
The debt legally contracted by or for the three districts is a collective debt, secured by a proportionate charge imposed on every tract of land included within their well-defined boundaries, and — until that debt be paid, or its invalidity judicially assailed and judicially decreed, in a proper suit, against the proper parties, and on proper evidence, the imposed charge shall continue to subsist. The Legislature has not, and •cannot lawfully exercise the extraordinary prerogative of ordaining that the indisputable obligation of one hundred parties, shall — though ■not reduced in amount — cease to exist as to ninety of those parties, and — by an arbitrary enactment — declare it to be and make it the obligation of the remaining ten.
“ The requirement of apportionment is imperative. And whenever the tax is a direct levy on property, there must be a taxing district. -Given a tax and a district, then the sum demanded of any one person, or laid upon any one parcel of property must have a fixed relation to the whole tax, as well as to that demanded of every other person or laid upon every other piece of property.” Cooley, Taxation, p. 159; Henry vs. Chester, 15 Vt. 460; Tide Water Co. vs. Coster, 18 N. J. Eq., 518. See, also, Wilson vs. Supervisors of Sutter, 47 Cal. 91; Woodbridge vs. Detroit, 8 Mich. 274, 309.
“ Though the districts are established at the discretion of the Legislature, the basis of apportionment which is jfixed upon must be applied throughout the district.” Cooley, Tax., 180; O’Kane vs. Treat, 25 Ill. 557, 561; Fletcher vs. Oliver, 25 Ark. 289.
“ There cannot be two rules of apportionment for the same district; if there could be, there might be any number, and in effect there would be none at all, and every man might be assessed arbitrarily.” Cooley, Ib. 180; Tide Water Co. vs. Coster, 18 N. J. Eq. 518.
*1376 Burroughs holds “ that the Legislature may, at any time, alter or modify the powers of municipal corporations: but when under the exercise of powers delegated, the rights of third persons have accrued, and they have assumed the form of a contract with the corporation, the Legislsture can not change the powers of the corporation so as to impair the rights of its creditors. The Constitution of the United States prohibits the States from enacting any law impairing the obligation of the contracts, and while the Legislature may alter or modify the powers of the subdivisions of the State, such alteration can not be allowed to affect the creditors of such subdivisions. They are entitled to claim that the corporation shall exercise such powers as it had at the time the contract was made. One of the classes of cases cited is when — after the subscription and issuing of bonds, the rate of taxation by the corporation is limited. In such cases the limitation does not affect the right of the creditor to have a levy made to pay his debt, although it may be necessary to exceed the limit. The operation of the act is prospective; and it cannot be construed retrospectively, so as to deprive the creditor of the right to the levy as it existed when the contract was made.”
B. p. 427 — 4 W. 535 — 9 W. 477 — 25 Wis. 122 — 31 Penn. 175 — 51 111. 147 — 45 N. Y. 234 — 6 Kansas 256 — 25 Cal. 638.
“It is not in the power of the Legislature, under the guise of taxation, to give the property of A to B, or to impose the whole burden of a tax for the State upon one county,” and — for the same reason — the burden of a tax for a county on entirely one of its sections. “ It is wrong that the whole should be taxed for the benefit of the few, and equally wrong that the few should be taxed for the benefit of the whole.” Burroughs p. 22. The improvement necessary or indispensable to, and undertaken by a district, must be — not merely commenced — but executed either in whole or in part by the entire district. Unless or until all are relieved by the execution or failure of the undertaking, or — according to circumstances — by the satisfaction of the full or proportionate sham of their liability, all are and remain bound.
We find, in the record, that — in the excluded district — the assessments already paid amount to upwards of two hundred and forty thousand dollars, and that but an insignificant fraction of that large sum has been received by the city and its officers. Is it liable for the re-imbursement of the whole or of any part of that amount'?
Were we to consider, as conclusive evidence, the declarations contained in acts of the Legislature, that the districts have not been protected from overflow, that the laws enacted for their drainage have failed in their purposes, would that be sufficient to establish that the work contracted for and done, in furtherance of the projet, has not *1377 been performed at all, or not performed according to the terms of the contracts, and that every outstanding warrant given as the price of that work is without consideiation? Would those declarations — if taken as evidence — be sufficient to authorize the court to pronounce, in this suit, that in whosoever hands those warrants may have passed, and whether those by whom they are held and due be or not before us, they are invalid and void, worthless as to the creditors, binding on no one, and that every guarantee, mortgage and privilege securing their payment must be cancelled, erased and destroyed ? We believe not.
Judge Dillon — in his book on municipal corporations — states as follows the general rule in regard to the recovery of taxes already paid : to justify the claimant’s action, three principal facts must concur:
“ The authority to levy the tax must be wholly wanting, or the tax itself wholly unauthorized; in which cases the assessment is not simply irregular, but absolutely void. 2. The money sued for must have been actually received by the defendant corporation, and received by it for its own use, and not as an agent or instrument to assess and collect money for the benefit of the State, or other public corporation or person; and 3, the payment by the plaintiff must have been made upon compulsion, to prevent the immediate seizure of his goods or the arrest of the person, and not voluntarily. Unless these conditions concur, paying under protest will not give a right of recovery. The same principles are applicable to actions for the recovery back cf money paid for illegal license taxes or fines imposed by a municipal court.”
The taxes, the amount of which plaintiff seeks to recover from the city, were assessed and collected under the authority of several acts of the Legislature; and every cent of the drainage assessment paid by plaintiff to the city, was paid without compulsion and applied to the satisfaction of'drainage warrants. As to the most of the drainage taxes levied on plaintiff’s land, they were received and disposed of by the Board of Commissioners, and neither in law nor in equity, can the city be held liable for their application, misapplication or re-imbursement.
We conclude that plaintiff has not shown that its drainage taxes were levied and paid without consideration, and that it was shown — in. so far as defendant is concerned, that said taxes were voluntarily paid and properly disposed of. Under these circumstances, plaintiff cannot recover.
As no decree based on any of the pleadings could have — in any way — affected or impaired the alleged rights of Warner Yan Norden, Ms intervention has no legal ground to stand upon.
It is — therefore—ordered, adjudged and decreed that the judgment of the lower court in favor of plaintiff and against the city of New Orleans, rendered on the 17th and signed on the 22d of January 1878, *1378 be and it is hereby annulled and reversed, and that — in lieu of it — there be judgment in favor of the city of New Orleans and against the plaintiff, rejecting the latter’s demand.
It is further ordered, adjudged and decreed that the intervention of Warner Yan Norden be dismissed as in case of nonsuit: the costs of the appeal to be paid in solido by plaintiff and intervenor — and those of the lower court, by Yan Norden as regards the intervention, the others by plaintiff.
Rehearing refused.