[No. 3405. Decided April 26, 1900.]

STATE SAVINGS BANK, *Respondent,* v. SIMON DAVIS *et al.,* as Board of Commissioners of Jefferson County, *Appellants.*

PROCESS—SERVICE—SUFFICIENCY—INDEFINITENESS OF RETURN.

A sheriff's return which shows that he served a motion and affidavit for a writ of mandamus "upon within named defendants William Bishop, Sr., and W. A. Andrews, as members of the Jefferson county board of commissioners, by delivering a true copy

thereof    *    *    *    to the above named, the said defend-
ants personally in Jefferson county," is not void for uncertainty,
but sufficiently indicates personal service upon both of the de-
fendants named.

COUNTIES—ISSUANCE OF BONDS—DIVERSION OF FUNDS—LIMIT OF IN-
    DEBTEDNESS—VALIDITY OF WARRANTS.

Where the question of funding "the present indebtedness
and also incurring an additional indebtedness for the purpose
of erecting public buildings" for the use of Jefferson county,
by the issuance of its bonds in the sum of $225,000, was sub-
mitted by order of the county commissioners, dated August
16, 1890, providing for a special election, to the voters of the
county and authorized by them, under Laws 1889-90, pp. 37-40,
which provided that "the proceeds shall be applied only for the
purpose for which said bonds were issued"; and the sum realized
from the sale of bonds was within the constitutional limit of in-
debtedness at the time of their issue and was sufficient to cover
the amount of the outstanding warrants on August 16, 1890, and
provide for the erection of a court house and jail, contracted
for by the commissioners, the fact that the commissioners di-
verted part of the proceeds of the bond sale to funding warrants
issued between August 16, 1890, and December 2, 1890, the date
of the jail contract, thus leaving no funds from the bond sale for
payment of the cost of the jail, but necessitating the issuance to
the contractors of warrants, which, at the date of issue, repre-
sented an indebtedness in excess of the constitutional limit,
would not invalidate. such warrants, but their validity would be
controlled by the financial condition of the county at the time
of making the contract upon which they are based.

SAME—MANDAMUS TO COMPEL TAX LEVY.

Where the proceeds of a bond sale have been diverted by order
of the county commissioners to other purposes than those which
the voters of the county authorized, and, in order to meet expen-
ditures which should have been paid from such bond proceeds,
warrants have been issued after the county has passed its limit
of indebtedness, the county may be compelled by mandamus to
levy a tax for the purpose of paying such warrants.

Appeal from Superior Court, Jefferson County.—Hon.
James G. McClinton, Judge. Affirmed.

W. W. Felger, Prosecuting Attorney (Burke, Shepard
& McGilvra, of counsel), for appellants.

*Benton Embree,* for respondent.

The opinion of the court was delivered by

GORDON, C. J.—The respondent is the owner and holder of certain warrants drawn upon the general fund of the county of Jefferson, and payable to the order of the Pauley Jail Manufacturing Company. Application was made by the respondent to the superior court for a writ of mandate compelling the appellants, the board of commissioners of Jefferson county, to levy the maximum rate of taxes for the indebtedness fund of the county based upon the assessed valuation of the taxable property of that county for the year 1898, and to compel such board, in making the levy, to take into consideration the amount of the indebtedness of the county and the interest accruing thereon. The application included also a prayer for general relief, and was supported by affidavit. A preliminary motion to dismiss the proceeding was made and overruled, and a demurrer to the affirmative answer was sustained. The trial resulted in a judgment awarding the writ, from which judgment and the order sustaining the demurrer to the affirmative answer this appeal is taken.

The first error assigned is the ruling of the court which denied a motion to dismiss the proceeding. The motion was based upon the alleged insufficiency of the service of the affidavit and motion for the writ. The return of the sheriff shows that he served it "upon within named defendants William Bishop, Sr., and W. A. Andrews, as members of the Jefferson county board of commissioners, by delivering a true copy thereof, with a copy of the affidavit, both certified by the plaintiff's attorney, to the above named, the said defendants, personally in Jefferson county." It is contended that this return indicates but a single service on one of the defendants, and is therefore

void for uncertainty. In support of the contention, appellants cite the case of *Rape v. Heaton,* 9 Wis. 328 (76 Am. Dec. 269). In that case the return of the officer was as follows:

"I have served this writ on *defendant* Peter Rape and William Rape by leaving a certified copy with *his* family, in *their* residence."

The supreme court of Wisconsin very properly, as we think, held that this return showed but a single service, while in the present case the return shows that both the defendants were personally served.

2. The next assignment is that the court erred in sustaining the demurrer to the affirmative defense. This assignment goes to the merits of the controversy. The ground upon which plaintiff's warrants are assailed is that the indebtedness evidenced by them was attempted to be incurred in excess of the constitutional limit of indebtedness. It appears from the allegations of the affirmative answer that on August 16, 1890, the assessment for that year was equalized, and amounted to $4,642,553, and that the amount of valid outstanding indebtedness existing against the county on that date was $60,206.59. On the same day the board of commissioners made an order providing for the calling of a special election to be held on the 19th of September, 1890, in the several precincts of the county, whereby was submitted to the legal voters the question of funding "the present indebtedness, and also incurring an additional indebtedness for the purpose of erecting public buildings for the use of said Jefferson county, said present indebtedness to be funded, and the money to meet said additional indebtedness to be raised by and upon the bonds of Jefferson county, Washington. Each of said bonds to be of the denomination of $1,000, and the total amount of said bonds to be $225,000." The

authority for holding this election is found in an act approved March 21, 1890 (Session Laws, pp. 37-40, inclusive). In § 5 of that act it is provided that the bonds may be sold by the county commissioners at not less than their par value, "and the proceeds shall be applied *only* for the purpose for which said bonds were issued." It appears that at the election so provided for, the requisite three-fifths vote was given, and thereafter, in pursuance thereof, bonds of the county were issued to the amount of $225,000, and the sum realized from their sale aggregated the sum of $232,341.29. It thus appears that the amount of the bonds authorized and issued falls within the limit of indebtedness permitted by § 6, art. 8, state constitution. It further appears that on or about October 1, 1890, the commissioners of the county, in anticipation of the sale of the bonds, awarded a contract for the building of a courthouse, and that the total cost thereof, including compensation to the architect and superintendent of construction, as well as all extras contemplated by the contract, amounted to the sum of $142,462.30; and that on December 2, 1890, the commissioners entered into a contract with respondent's assignor, viz., the Pauley Jail Building and Manufacturing Company, whereby that company agreed to provide and construct a jail in the courthouse which was then in course of erection, and the commissioners, on behalf of the county, agreed to pay therefor as full compensation $17,287. Respondent's warrants are a part of the warrants issued in payment for the jail, pursuant to that contract. It also appears that, between August 16th, being the date of the submission of the bonding proposition, and December 2, 1890, the date of awarding the contract for the jail, warrants of the county were issued (for other purposes than the building and erection of public buildings for the use of the county) in an amount aggregating the

sum of $61,885.88; also that respondent's warrants were not in fact issued until May 2, 1892; that of the sum received by the county from the proceeds of the bond sale, $19,054.13 was placed to the credit of its general fund, $105,000 to the credit of its road fund, and the remainder, viz., $108,287.16, to the credit of a fund denominated its "Court House Fund."

This is the substance of the affirmative answer, and appellants contend that it is sufficient to establish that the county of Jefferson had already exceeded the limit within which it was authorized to incur indebtedness at the time when it entered into the contract with respondent's assignor for the services which constituted the basis for the issuance of respondent's warrants. The important question is, not what was the condition of the county at the date of the issuance of the warrants, but what was its financial condition at the time of making the jail contract. It is conceded by appellants' counsel that the rule of law is that the obligation is incurred by the making of the contract in pursuance of which the warrant is issued. Such appears to be the established law. *Childs v. Anacortes,* 5 Wash. 452 (32 Pac. 217); *Western Town Lot Co. v. Lane,* 65 N. W. (S. Dak.) 17; *Culbertson v. Fulton,* 127 Ill. 30 (18 N. E. 781).

Applying this rule to the facts in the present case, it is found that December 2, 1890, and not May 2, 1892, was the date upon which the liability to plaintiff's assignor was incurred by the county. The proceeds of the bond issue were sufficient to have funded the indebtedness which the vote authorized, and also to erect the buildings. It is conceded in the affirmative answer that the courthouse and jail were public buildings of the county, the erection of which was contemplated in the submission to the voters of the proposition to incur the indebtedness; so that, had

the proceeds of these bonds been devoted to the purpose authorized by the voters and solely thereto, no question could arise here as to the validity of these warrants. But it appears that the authorities not only funded the valid indebtedness of the county outstanding at the date of the submission of the question of bonding to the voters, viz., $60,206.59, but also included the warrants issued between that date and December 2, 1890, which aggregated $61,-885.88. This appears to have been done subsequent to the time of entering into the contract for the jail, and it cannot be claimed that the respondent or its assignor acquiesced in the action so taken by the county authorities. When it is conceded, as it is here, that the jail improvements are part of the public buildings contemplated in the bonding proposition, and when it is further ascertained that the proceeds of the bond sale were sufficient to have provided payment of all indebtedness incurred in the building and construction of such public buildings, as well as sufficient to pay the outstanding indebtedness which by the vote was authorized to be funded, nothing remains of the contention that this indebtedness was incurred in excess of the constitutional limit. We have nothing to do in this case with any question touching the validity of the warrants issued or authorized between August 16, 1890, and December 2, 1890. The question of their legal status is not involved here. The respondent's assignor is presumed to have acted upon the assumption that the sum realized from the sale of the bonds would be properly applied as the law required that it should be, viz., "only for the purpose for which said bonds were issued." He is presumed to have known what the law required the county officers to know, viz., that there was no authority conferred upon the county, either by the statute or by the vote which had

been taken, to pay warrants issued subsequently to August 16, 1890, from the proceeds of the bond sale.

Another position urged by counsel for appellant is that, conceding the sufficiency of the bond proceeds to pay the valid indebtedness existing at the time of the bond authorization, and the obligations arising under the courthouse contract, and also the jail contract, a diversion of a part of the proceeds of the bond sale would not render the county liable, upon the theory that, if a diversion of the fund has occurred, it was the act of the treasurer for which the county is not liable; that the county cannot act, in the custody and disbursement of its funds, except through the treasurer; that it has no choice as to whom these powers and duties shall be devolved upon in its behalf, and that, having no control over the treasurer's act of misfeasance in using the bond proceeds to redeem void warrants, it could not have prevented him from doing so, and is not chargeable with liability for his act of misfeasance. The position cannot be maintained. It has been shown that the county commissioners apportioned the proceeds of the bond sale to various funds. The county acted through its commissioners.

"Its powers can only be exercised by the county commissioners, or by agents or officers acting under their authority or authority of law." Bal. Code, § 267.

They are specially authorized to compound debts due their county, and "have the care of the county property and the *management of the county funds and business.*" Bal. Code, § 342. The diversion of the bond proceeds was caused by the county commissioners, for whose action in this respect the county must be held liable. *Potter v. New Whatcom,* 20 Wash. 589 (56 Pac. 394, 72 Am. St. Rep. 135); *Northwestern Lumber Co. v. Aberdeen, ante,* p. 404, decided April 26, 1900.

3. Mandamus is the proper remedy to compel the payment of these warrants, and it was not incumbent upon the respondent to bring an action at law to collect them. *Bacon v. Tacoma,* 19 Wash. 674 (54 Pac. 609), and cases therein cited.

4. The lower court found as a fact the "reason for the refusal of the board of commissioners of the county to make a greater levy than they did make [namely, one mill on each dollar of the authorized valuation of the taxable property of said county] for the indebtedness fund, to be the claim of the defendants and the county that the said warrants of plaintiff are illegal and void, as being issued beyond the legal and constitutional debt limit of the county;" that in making its levy the board of commissioners did not base the same upon the indebtedness of the county, "but such board arbitrarily, and at the behest of some of the taxpayers of the county, fixed said rate of levy at one mill." No exception to these findings was preserved, their correctness is not here questioned, nor is it contended that mandamus is not a proper remedy to compel the levy of a tax under such circumstances. The warrants were *prima facie* valid. The burden was upon the appellants to show their invalidity, if invalid. The findings justify the judgment, and the exceptions to the conclusions of law are, in our opinion, not well taken.

The judgment is affirmed.

DUNBAR, FULLERTON and REAVIS, JJ., concur.