[No. 4655.   Decided July 16, 1903.]

THE STATE OF WASHINGTON on the Relation of Arthur Evers, Respondent, v. JOHN BYRNE et al., as Commissioners of Thurston County, Appellants.

MANDAMUS — PARTIES — OFFICIAL CAPACITY.

A petition in which the averments relate to the appellants as county commissioners and the prayer is that, as such, they be required to make a tax levy, sufficiently brings them into court in their representative and not in their individual capacity.

SAME — EMERGENCY FOR ALTERNATIVE WRIT.

In an application for an alternative writ of mandamus to the county commissioners to levy a tax, sufficient emergency is shown by the fact that the tax levy must be decided at the session then being held and within one week; and the relator was not required to show why he did not make application sooner.

SAME — DEMAND.

Where the county commissioners are required by law to levy a tax to meet a certain charge, and have actual knowledge of the law, and admit knowledge of the essential facts, and deny that they are required to make the levy, and it is apparent from their course that a demand would have been useless, no demand is necessary prior to the issuance of an alternative writ, although the levy may serve a private interest.

TAXATION — SCHOOL LEVY — STATUTES — REPEAL.

Laws of 1889-90, p. 48, § 5, providing that school directors must ascertain and levy annually the tax necessary to pay inter-

est on bonds issued under authority thereof, was repealed by Laws 1897, p. 356, which provides (p. 393, § 97) that the directors shall annually ascertain the necessary amount, and report the same to the county commissioners, and that the latter shall make the levy; and this changes the method of tax levies in the case of outstanding bonds issued under the earlier act, in the absence of the impairment of any contractual right.

SAME.

It is competent for the legislature to provide that the amount of a school tax shall be determined by the school board, and to require that the ministerial act of making the levy be performed by the board of county commissioners.

MANDAMUS — INTEREST ON BONDS.

Where the school directors annually certify the amount necessary to pay interest upon school bonds, and the county commissioners neglect and refuse to make the required levy, mandamus will issue, on the application of the holder of part of the bonds, requiring the levy to be made.

MANDAMUS — DOUBTFUL CASE.

Where the intent of the law is clear, it can not be said that there is such doubt as to prevent the issuance of a writ of mandamus.

TAXATION — INTEREST OF BONDHOLDER.

It cannot be objected that the relator, asking for a tax levy to meet interest on bonds, is the holder of only one series of the bonds, as he could not ask for a levy in his own behalf only, thereby gaining a preference.

SAME — LEVY AFTER TAX ROLLS ARE COMPLETED.

It cannot be objected to the issuance of a writ of mandamus requiring a tax levy that the tax rolls are already completed and partly collected, and that it will be an inconvenience to levy and collect the amount wrongfully omitted from the rolls in the first instance.

SAME — DISCRETION IN DISTRIBUTING THE TAX.

Where the lower court has ordered a tax levy to meet interest on bonds that has accumulated for several years owing to the failure of the proper officers to levy the tax, it cannot be said that there was abuse of discretion in not distributing the tax over a number of years.

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge. Affirmed.

*George H. Funk,* Prosecuting Attorney, and *Vance & Mitchell,* for appellants:

Where the duty is one affecting a private interest demand is necessary before mandamus can be maintained. 13 Enc. Pl. & Pr. p. 619; Spelling, Injunction, etc. § 1381; Wood, Extraordinary Remedies, 93; *Board of Commissioners v. People,* 46 Pac. 107; *Ingerman v. State,* 128 Ind. 226; *People v. Mt. Morris,* 137 Ill. 576; *People v. Board of Education,* 127 Ill. 613; *Macoupin County v. People,* 58 Ill. 195; *Lake County Com'rs v. State,* 24 Fla. 277; *Howard v. Huron,* 26 L. R. A. 493; *State ex rel. Magie v. Township of Union,* 42 N. J. Law, 531; *Attorney General v. Boston,* 123 Mass. 460; 2 Dillon, Municipal Corporations, 866-7 and notes.

*Peters & Powell* and *Burke, Shepard & McGilvra,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—A petition was filed in the superior court by relator, the respondent here, asking the issuance of a writ of mandate directed to the appellants, requiring them as county commissioners, to make the necessary levy to provide for the payment of accrued interest upon certain outstanding bonds issued by School District No. 1 in Thurston county. It appears from the petition that on July 1, 1890, said district regularly issued and sold a series of bonds in the sum of $59,000, payable twenty years after date, and bearing interest at the rate of six per cent. per annum, payable semi-annually; that on the first day of June, 1893, the said district, for the

purpose of constructing what is known as the "West Side School Building" therein, regularly issued and sold bonds in the sum of $15,000, also payable twenty years after date, with interest at six per cent. per annum, payable semi-annually. It is also alleged that the petitioner is the owner of the last named series of bonds and the interest coupons thereof; that the petitioner does not know who is the owner of the first mentioned series of bonds, but that the two series named represent all of the outstanding bonded indebtedness against said school district. It is averred that no interest has been paid on the first mentioned series of bonds which has matured since January, 1900, and that no interest payment upon the later series have been made since the payments which matured in June, 1900, although demand has been regularly made for the same at the place and times of payment; that the board of directors of said school district have at all times since the issuance of both of said series of bonds recognized the validity of the same, and that at a meeting of said board next preceding the October session of the county commissioners of said Thurston county, the said school directors have regularly, during the years 1899, 1900, 1901 and 1902, certified to said county commissioners, in the manner required by law, the amount of interest outstanding on all of said bonds, requiring said commissioners to levy a sufficient tax to cover said interest; that said commissioners have at all times failed and refused to make any levy to provide for said interest, and there has been no money in any fund applicable to the payment thereof. The amount of outstanding due and unpaid interest upon all of said bonds, including interest on overdue coupons, is alleged to be $18,561; and it is further alleged that the petitioner's agent, who

verified the petition, and who acted in behalf of petitioner, has requested one of the board of county commissioners—and the only one accessible to said agent—that he and his co-commissioners, at their next meeting for the purpose of levying the general taxes, shall levy a tax to pay said interest, but the said commissioner has informed said agent that the said board of county commissioners has for the years aforesaid refused to make any levy to meet said interest, for the reason that they believed that the interest is payable out of the general school fund, and that they as county commissioners are not authorized or required by law to make a special levy for the purpose.    This established course of the county commissioners, and the further fact that, unless restrained, they will complete the tax levy of 1902 by omitting any special levy for this interest, are alleged as grounds for speedy relief by way of an alternative writ of mandate, and also for a restraining order preventing such levy from being completed with such omission pending the hearing on a return to the alternative writ.    The alternative writ was issued, and appellants first moved to quash the same and dismiss the proceeding, on the ground that the facts stated in the petition are insufficient to support the writ.    The motion was denied.    Thereupon appellants demurred to the petition upon the same ground and upon the further ground that the court has no jurisdiction of the subject-matter. The demurrer was also overruled.    Appellants then made return to the alternative writ, substantially admitting the material facts set out above, but denying that any demand was ever made upon them as a board of county commissioners to make the levy mentioned, and also denying that it is their duty, or that they have the power,

to lawfully make the same.   The return also contains certain affirmative matter to the effect that appellants did not believe, prior to the issuance of the alternative writ, that it was their duty to make such levy; also certain averments relative to the financial condition of the school district.   A demurrer to the affirmative matter contained in the return was sustained, and thereupon the court heard proofs, and found that the material allegations of the petition and alternative writ were thereby sustained.   Judgment was entered directing the issuance of a peremptory writ of mandate requiring the appellants, as county commissioners, to include in their general levy of taxes for 1902 a levy on the property of said school district of a tax sufficient to pay the amount of interest above mentioned.   This appeal is from said judgment.

It is first urged in support of the motion to quash the alternative writ that the petition upon which the writ was based does not allege anything as to the official and representative character of appellants, and that they were brought into court by means of the alternative writ as individuals, and not as county commissioners; also that the petition was filed and the alternative writ was issued on the same day appointed by law for the meeting of the county commissioners, at which meeting the levy for the ensuing year was required to be determined.   It is contended that, since the only emergency shown by the petition was the fact that, if the alternative writ did not issue, the appellants would proceed to make the levy, omitting therefrom the special levy desired, there was no proper excuse for failing to make the application in time to have given notice of the hearing prior to the issuance of the writ.   Referring to the first point sug-

gested, we think it sufficiently appeared from the context of the petition that the respondent sought to bring the appellants into court in their representative, and not in their individual capacity. Every averment connecting appellants with the subject matter related to them as county commissioners, and not as individuals, and the prayer of the petition asked that the writ should issue requiring them, as county commissioners, to make the levy. In relation to the second contention above mentioned, we think sufficient emergency appeared upon the face of the petition to warrant the issuance of the alternative writ. The law required the levy to be completed at that session of the commissioners, and within about a week, and, with the past and threatened course of appellants in the premises as set forth, the necessity for prompt action sufficiently appeared. It is true no allegations were made to show that the application could not have been made sooner, but we think such allegations were unnecessary. Appellants had just assembled, or were about to do so, in a public capacity. While so assembled, the law imposed upon them a duty in the premises, either to do or decline to do that which respondent sought. We know of no legal requirement that respondent should have sooner made his application, and we see no impropriety in his making it at the time appellants were assembled when they would consider the tax levies for the year, and which involved the actual subject-matter of his petition. No error was therefore committed in denying the motion to quash on the grounds urged.

It is next insisted that the alternative writ was wrongfully issued, because no demand was made prior to the application. The only allegations bearing upon that subject relate to an interview with one member of the board.

This was in the nature of a private conversation, and cannot be said to have amounted to a demand at least of the board of county commissioners. It is, therefore, necessary to determine if a demand was required in this case. This subject is involved in conflict of authority. We are first referred by appellants to High's Extraordinary Legal Remedies (3d ed.), § 41, where the following statement is found:

"And it is held, where the person aggrieved has a private interest in or claims the immediate benefit of the act sought to be coerced, that he must first make a demand upon the officer to lay the foundation for relief by mandamus."

It is argued by appellants that the relator (respondent here) has a private interest to be served by this proceeding, and that the case therefore falls within the above rule. In examining the cases cited to support the above stated rule, we find *Commonwealth v. Commissioners*, 37 Pa. St. 237. There it was sought by the relator, as the court states it, "to compel the commissioners to assess and collect a tax, as by law they are required to do, that the treasury of the county may be placed in a condition to pay the interest on a loan, part of which he holds." It was held that it was not necessary for the relator to precede his application for mandamus with a request or demand. In that connection the court observes as follows, at page 246:

"If the commissioners may neglect this duty until somebody interested requests them to perform it, we know of no duty of their office which they may not in like manner neglect. And if *they* may wait for individual requests and demands before going forward in a plainly marked path, other public officers may likewise halt in the way prescribed for them to walk in, and the end will be that laws will become ropes of sand, and govern-

ment an unsubstantial dream.   The duty of the commissioners was plain and imperative before any *mandamus* issued."

The above case seems to involve the precise principle raised by the petition in the case at bar.   Mr. High, in the same section, announces the rule that a demand is unnecessary where the duty of the officer is of a strictly public nature, and where no individual interests are affected. It is not made very clear just what are the duties "of a strictly public nature," as distinguished from those where individual interests are affected.   The classification made by the author is at most difficult to apply in all cases. Such difficulty is apparent from the fact that the case of *Commonwealth v. Commissioners, supra,* is cited in support of the last stated rule as to classification.   Thus, apparent assent is given to the doctrine of that case as involving a public duty which is broader than the mere service of a private interest.   Possibly, the author may have entertained the view that duties pertaining to the levy and collection of public taxes, as provided by law, are strictly public in their nature, although they may incidentally serve a private interest.   That it may have been his view that the duty to make such a tax levy as is here sought is not subject to the rule requiring a demand is emphasized by a further statement, found in § 377b of the same work, as follows:

"When the duty of municipal officers to levy and collect a tax for the payment of a judgment against a corporation is plain and imperative, it affords no excuse for their inaction that a demand was not made upon them for the performance of this duty before seeking the extraordinary aid of the courts.   The relief will therefore be granted in such case, although no previous demand was made upon the officers to levy the tax."

In support of the above we find cited *State ex rel. Farr v. City Council of Racine,* 22 Wis. 258, and *Fisher v. Charleston,* 17 W. Va. 595. We have examined these cases and find them directly in point. In the last-named case the court, after reviewing numerous conflicting authorities, adopts the rule laid down in *Mottu v. Primrose,* 23 Md. 482, 501, which is stated as follows:

"The writ not being *ex debito,* but in all cases resting in the sound discretion of the court, there may be some cases in which the court, in the exercise of its discretion, would refuse the writ where no previous demand and refusal had been made; as where the claim of the petitioner, or the duty to be performed, is uncertain or not clearly known to the respondent. Such, however, is not the case here, . . . and to require of the petitioner a previous demand upon them to discharge their duty, would have been to require a useless and nugatory act."

This rule seems peculiarly applicable in the case at bar. The appellants were chargeable with knowledge of the law relating to their public duties, and that they had actual knowledge of the provisions of law in the premises, and of the desire that they should make the levy is not disputed. In the return to the alternative writ appellants admit knowledge of the essential facts, but simply deny that they are required to make the levy. It is thus apparent from their course, both prior and subsequent to the issuance of the alternative writ, that a demand would have been a useless thing. In *Attorney General v. Boston,* 123 Mass. 460, 477, it was observed as follows:

"But where a municipal corporation or board has distinctly manifested its intention not to perform a definite public duty, clearly required of it by law, no demand is necessary before applying for the writ."

In view of the authorities we have discussed, and also of the circumstances of this case, it is held here that no demand was necessary prior to the issuance of the alternative writ, if the law imposed upon appellants the duty to make the tax levy sought. That subject will be hereinafter discussed.

Did the law require appellants to make this levy? These bonds were issued under authority of the act of 1890. Session Laws 1889-90, p. 45. Section 5 of that act provides that "the school directors of said district must ascertain and levy annually the tax necessary to pay the interest upon such bonds as it becomes due." This act was carried forward into Hill's Code, Vol. 1, title 50, ch. 4. By an act of the legislature, as found in chapter 118, p. 356, of the Session Laws of 1897, the provisions of the said act of 1890 were expressly repealed. The act of 1897 purported to cover the entire law relating to the system of public schools in this state. The act declares that it "shall be known and cited as the Code of Public Instruction of the State of Washington." By the repeal of the act of 1890, the provision above quoted requiring the directors of school districts to ascertain and annually levy the tax necessary to pay interest upon school bonds as it becomes due was also repealed. The procedure in that particular was changed by § 97 of the act of 1897, which provides that the directors shall still annually ascertain the necessary amount, but, instead of making the levy of the tax themselves, they are required to annually report the amount to the board of county commissioners, and the latter are required to make the levy for its collection as in the case of other taxes. The duty of the county commissioners to levy the tax when it has been returned and certified to them by the school

directors seems to be clear.    The petition and record
here show that the directors of school district No. 1 of
Thurston county annually certified the amount required
to pay interest upon these bonds, but appellants neglected
and declined to make the required levy.    It is contended
that the act of 1897 is independent, and not amendatory,
in its nature, and that it was, therefore, not intended to
change the method of tax levies in the cases of then out·
standing bonds unless school districts and bondholders
should agree to call in outstanding bonds, and issue in
lieu thereof new bonds under the later act.    We think
it was the intention that the new act should supplant the
old one as to the method of procedure, and that method
must be followed in all cases, unless it shall have the
effect to impair some contractual right, which is not the
case here.

It is further urged by appellants that it is not compe-
tent for the legislature to provide that one municipal
corporation shall exercise the taxing functions of another,
and that, if respondent's position here is correct, then
the school district is no longer authorized, through its
executive body, to determine and levy taxes necessary
for the payment of its debts and maintenance.    The law
does, however, provide that both the power and duty of
determining the amount rests with the officers of the
school district, but the mere ministerial duty of making
a levy therefor devolves upon another.    It thus appears
that none of the essential functions of local control re-
lating to the amount of the tax that shall be imposed
are in any degree affected by the law.    No authorities
are cited upon this point.    The method provided has,
no doubt, been pursued by the school districts of this
state for the past six years, and, in the absence of an

authoritative showing that such a method is inconsistent with well-established principles, it should, for that reason, if for no other, be held that it is unassailable.

The principle that a writ of mandate will not be issued in a doubtful case is also invoked by appellants. It is contended that sufficient doubt existed as to the proper construction of the law relating to appellant's duties in the premises to prevent the issuance of the writ in this case. We are not disposed to take that view. It appears to us that the legislative intention was sufficiently clear, and that it should not be judicially held that there was sufficient doubt to place this case within the above rule. Perhaps few mandamus cases ever arise where there is not some showing of sincerity in the way of opposition to discharging the duty sought to be enforced. In that sense it may be said that there is always some doubt in the mind of the officer who resists the thing sought. But in many such cases it cannot be said that the doubt is sufficiently well founded to invoke the above rule. · It is so held here.

It is next urged that the respondent here, as the relator in this action, had no authority to ask a mandate to compel the levy of a tax for interest upon bonds which he did not own. Being the owner of but one series of outstanding bonds, he certainly could not ask a levy in his own behalf alone, as that would have had the effect to make him a preferred creditor of a given class. His only remedy was, therefore, to ask that the neglected duty be discharged as to all creditors of his class including himself.

It is further urged that since the tax rolls for the taxes of 1902 have all been completed, and a portion of the taxes collected, before the determination of this case

in this court, this court should do no more than merely
affirm the reasoning of the lower court, and should not
now require the making of a levy as provided by the·
writ issued. Such a determination of the case, it seems
to us, would be valueless, and would leave the respondent
with a clear legal right, but without a remedy in the prem-
ises. Appellants refer us to the case of *Wells ·v. Commis-*
*sioners of Hyattsville* (Md.), 20 L. R. A. 89 (26
Atl. 357). In that case the commissioners had at-
tempted to follow a legislative act which exempted build-
ings, improvements, and personal property from taxa-
tion. They levied taxes for 1892 upon land alone, and
it was sought by mandamus to compel them to revise the
rolls, and make the levy upon the property exempted
by the statute. It was held that the legislative act was
void, but inasmuch as the time for levying the 1892
taxes had passed, the court declined to order the writ
of mandate. The case, however, necessarily called for
a complete revision of all the tax rolls for the year 1892,
which was probably impracticable at the time the case
was decided. It is also possible that Maryland had no
statute such as we have in this state authorizing a relist-
ing, reassessment, and relevy of proper taxes. Section
1742, Bal. Code, a part of the revenue act of 1897 still
in force, we think is sufficiently broad to authorize such
a levy or a special levy for this tax. No doubt some
taxpayers of the district have availed themselves of the
privilege of paying their full tax as already levied for
the year 1902. But this is one of the burdens of taxation
that cannot well be avoided under the circumstances.
Those who have already paid their full taxes can doubt-
less be notified of this delinquency, and the necessary
amount can be added to the taxes of those not yet fully

paid. Respondent had the clear right to have this tax levied regularly with the 1902 tax levy, and no additional burden is imposed upon the taxpayers that did not exist at that time. Relating to any inconvenience or claim of confusion in the premises, it may be said that in *State ex rel. Ross v. Headlee*, 22 Wash. 126 (60 Pac. 126), this court affirmed a judgment which directed the issuance of a writ of mandate against the auditor of Snohomish county, requiring him to revise the tax rolls and extend the taxes in accordance with a reduced levy made by the county commissioners. The revision related to the levy of October, 1899. The case was decided here January 29, 1900, and did not become final until thirty days thereafter. The tax had become payable before this court's judgment had become final, and possibly some persons had paid their taxes meanwhile. Again, in *State Savings Bank v. Davis*, 22 Wash. 406 (61 Pac. 43), this court decided, on April 26, 1900, that a judgment authorizing a writ of mandate requiring the commissioners of Jefferson county to levy the maximum rate for the year 1898 should be affirmed. It will be observed that the whole year of 1899 succeeding the year when the levy should have been made had expired before the decision of this court was rendered.

It is last urged that it was within the discretion of the lower court to have directed the distribution of this delinquent tax over a number of years, and thus relieve in some measure the burden of the additional tax. We are asked to modify the judgment to that extent. It is not necessary that we shall examine the question as to what extent the lower court had discretion in the premises. If he had such discretion, we do not think we should review it here to the extent of saying that it was

abused. Respondent's rights are to be regarded here equally with those of the taxpayer. The school district has enjoyed the benefits accruing from the use of the respondent's loan, and for years he has received no interest when he was entitled to it, as the contract and law provide. The officers of the school district have discharged their duty, but up to this time it has not been productive of results in behalf of the creditors of the district. We see no reason in conscience why they should be longer postponed in the enforcement of their rights.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, ANDERS and DUNBAR, JJ., concur.