VANCE VS. CITY OF LITTLE ROCK et al.

1. MUNICIPAL TAXATION. *Subject to Legislative control.*
   The Legislature has power to provide in what manner, and to what extent taxes shall be levied to support municipal corporations, and how their debts shall be paid, subject to constitutional limitations.
2. ———
   A municipal corporation has no inherent power to levy taxes. It can only levy such as are authorized by law.

3. ————. *Constitutional restrictions upon.*

The provisions of the Constitution restricting the power of municipal corporations to levy taxes for general purposes, and to pay indebtedness existing at the time of its adoption, is valid and binding. But *semble*, that a power conferred to levy taxes in payment of indebtedness contracted prior to the adoption of the ·Constitution could be repealed or' limited by it.

4. CERTIORARI. *How objection to return taken.*

The objection that the return to a writ of certiorari sets up matters *de hors the record*, if valid under existing laws, should be raised by motion to strike, and will not be considered on demurrer.

5. MUNICIPAL TAXATION. *Power of the Federal Courts over.*

The courts of the United States can impart no taxing power to a municipal corporation, and an attempt by them to compel by mandamus the levy of a tax not authorized by the laws of the State, would be an abuse of the writ.

6. ————. *Excessive levy quashed on certiorari.*

The municipal authorities of the city of Little Rock levied a tax of five mills for general purposes, and ten mills to pay indebtedness of the city. Five mills of the latter levy was for judgments recovered in the Circuit Court of the United States, and was made in obedience to a peremptory writ of mandamus issued out of that Court. It was not shown that any of the indebtedness, for which the levy of ten mills was made, was created under circumstances that would conflict with the constitutional restriction on the municipal taxing power: Held, on certiorari to quash the levy, that the levy for general purposes was valid; that the levy of ten mills for indebtedness was excessive; that the levy of five mills under the mandate of the Federal Court exhausted the taxing power of the corporation, and would not be interfered with; that the residue of said levy should be quashed.

APPEAL from the *Pulaski* Circuit Court.

Hon. R. A. HOWARD, Spec. Circuit Judge.

*Dick Gantt* for appellants.

Circuit Court had jurisdiction. Gantt's Digest, secs. 1198–99; *Floyd* v. *Gilbreath*, 27 Ark., 675; *Greedup* v. *Franklin County, ante; Murphy* v. *Harbison*, 29 Ark., 340; *Vaughn* v. *Bowie, ante;* Dillon on Mun. Cor., 740, *et seq.;* Hilliard on Taxation, 451, secs. 21, and *n;* Cooley on Taxation, 530, *et seqentia.*

Court in certiorari cannot look beyond the record. *Redmond* v. *Anderson*, 18 Ark., 449 ; *Jefferson County* v. *Hudson*, 22 Ark., 595 ; *Miller* v. *McCollough*, 21 W., 426 ; *Dicus* v. *Bright*, 23 ib., 107 ; *Countz* v. *Markling, ante;* Cooley on Taxation, 535.

As to power, Const. of 1874, art. 12, sec. 4 ; acts 1875, p. 223, sec. 4 ; Dillon on M. C., secs. 55, 107, and cases.

The limit of taxing power in the city was not greater than it is when the contract was made on which the judgment was rendered which the mandamus was issued to pay. See Gantt's Digest, secs., 3295 and 5062.

Other authorities cited as applicable. Cooley on Taxation, 209, and cases 524, 526 ; Dillon on Mu. Cor., sec. 605, *n* 2, 610 ; Cooley's Const. Lim., secs. 17, 8, 520, 285, 287 ; *Supervisors* v. *United States*, 18 Wall., 71 ; *Rees* v. *City of Waterton*, 19 ib., 120 ; id., 122 ; *Rusch* v. *Supervisors of Des Moines County*, 1 Woolw. 313 ; High on Ex. Cy. Rem., 281 and note ; *Butz* v. *City of Muscatine*, 8 Wall, 582 ; *Riggs* v. *Johnson County*, 6 Wall, 166 ; *United States ex rel.* v. *Council of Keokuk*, ib., 514 ; *Kaufman & Co.* v. *Barl,* 26 Ark., 24.

*Gallagher & Newton, Yonley & Whipple*, for appellee.

Cited, in support of the mandamus, *Riggs* v. *Johnson County*, 6 Wall, 166. Commented on Const. of 1874, art. 12, sec. 4 ; sec. 4, Rev. act of 1874–75, p. 223.

Argued that the power to levy five mills for general indebtedness was independent of and over and above what it might be compelled to levy by mandamus, citing *Hoffman* v. *City of Quincy*, 4 Wall, 55 ; *English* v. *Oliver* (MSS.) ; *Rees* v. *City of Waterton*, 19 Wall., 116 ; *State* v. *Douglas*, 33 N. J., 363.

The taxes of two and three mills may be supported on independent grounds, viz., that of contract based on the act of Feb. 15, 1859, amending the charter of the city to raise funds to pay

bonds issued to Memphis and Little Rock Railroad Company. See sec. 17, charter 1869.

Other authorities. *Burton* v. *Platt County*, 2 Dillon, 4; *Clark* v. *Davenport*, 14 Iowa, 494; *Butz* v. *Muscatine*, 8 Wall., 580; *United States* v. *Burlington*, 2 Am. L. Reg. (U. S.), 394.

In any event, only the excess over ten mills can be quashed. *State* v. *Kingsland*, 23 N. J., 823; *King* v. *King*, 2 T. R., 235; *Lawton* v. *Commissioners*, etc., 2 Caines, 182; 3 Green., 322; *O'Kain* v. *Treat*, 25 Ill., 557; *People* v. *Nichols*, 44 Gilman, 307; Cooley on Taxation, 296.

ENGLISH, CH. J.:

On the 19th October, 1875, the Council of the City of Little Rock passed the following ordinance:

Ordinance No. 36.—An ordinance to levy taxes for the year 1875.

*Be it ordained by the City Council of the City of Little Rock.*— Section 1. That the following rates of taxation be levied for the year 1875. for the several purposes herein specified, to-wit:

For general purposes............................Five mills.
For outstanding certificates issued to the
    Memphis and Little Rock Railroad.......Three mills.
Bills payable for United States currency
    borrowed........................................Two mills.
United States judgments.......................Five mills.

Amounting in all to fifteen mills on the dollar on the assessed valuation of the property, real and personal, subject to taxation by the city.

The ordinance was certified to the Clerk of the County Court of Pulaski county; the city rates, as fixed by it, carried on to the tax books for the year 1875, and the books delivered to the sheriff, for collection, etc.

Calvin B. Vance, an owner of lots and tax-payer of the city, applied to the Circuit Court of Pulaski county to remove the

ordinance into that court by certiorari, and quash it, on the ground that the city had levied five mills in excess of the amount which it had the power to levy under the constitution and laws of the State; and also for a restraining order to the sheriff, etc.

The writ was awarded, the clerk of the city returned the ordinance, and the return was accompanied by the answer of the city, setting up matters *de hors the record* in support of the levy, etc.

The court, upon demurrer to the answer, etc., refused to quash the levy, or any part of it, and Vance appealed to this court.

The legislature has the power to create, modify, or abolish municipal corporations. It has also the power to provide in what manner, and to what extent, taxes shall be levied for their support, and how their debts shall be paid upon their dissolution, subject, of course, to constitutional limitations and restrictions. *Layton* v. *New Orleans*, 12 La., An. 516; 1 Dillon on Corp., sec. 36., etc.

The power of taxation is an attribute of sovereignty, and belongs to the State. A municipal corporation has no inherent power to levy taxes. It can only levy such taxes as it is authorized by law to levy, and a tax laid by it without authority of law is void. Blackwell, 8, 186, 523; Cooley on Taxation, 3, 33, 535; *Heine* v. *Levee Commissioners*, 19 Wallace, 660.

Section 4, article 12, of the present constitution (which went into force nearly a year before the tax ordinance in question was passed) provides that: "No municipal corporation shall be authorized to pass any laws contrary to the general laws of the State; nor to levy any tax on real or personal property to a greater extent, in one year, than five mills on the dollar of the assessed value of the same: *Provided,* That to pay indebtedness existing at the time of the adoption of this constitution, an additional tax of not more than five mills on the dollar, may be levied."

This provision of the constitution is binding alike upon the legislature, the courts, and municipal corporations:

Section 4 of "An act to amend the revenue laws of the State," approved March 5, 1875, (and before the tax ordinance in question was passed,) Acts of 1874–5, p. 223, provides that: "The amount of taxes levied in any one year, by the constituted authorities of any city or town, shall not exceed the sum specified in this section, viz.: For all general city or town purposes, five mills on the dollar: for paying indebtedness existing at the time of the adoption of the present constitution of the State, not more than five mills on the dollar: *Provided*, The above limitations shall not be construed to prohibit assessments on property adjacent to local improvements made in any city or town, for the purpose of paying the costs thereof, and damages occasioned thereby." (As to this proviso, see sec. 27, art. 19, Constitution.)

No valid objection can be made to the first item of the levy in question: " For general purposes, five mills." This is authorized by the constitution and the revenue act above quoted.

The three other items, amounting to ten mills, to pay debts, are plainly in excess, by five mills, of the taxing power of the city, as limited by the clause of the constitution above quoted, as well as by the section of the revenue act copied.

Possibly, however, the city may have a taxing power to pay some debts legally contracted by it before the adoption of the constitution, which was not, nor could be, repealed or limited by it, or subsequent revenue acts.

Thus, where a statute has authorized a municipal corporation to issue bonds, and to exercise the power of local taxation in order to pay them, and persons have bought and paid value for bonds issued accordingly, the power of taxation thus given is a contract within the meaning of the constitution of the United States, and cannot be withdrawn until the contract is satisfied.

The State and the corporation, in such a case, are equally bound. A subsequently passed statute which repeals or restricts the power of taxation so previously given, is, in so far as it affects bonds bought and held under the circumstances mentioned, a nullity. It is the duty of the corporation to impose and collect the taxes in all respects as if the second statute had not been passed; and if it does not perform this duty, a mandamus will lie to compel it. *Von Hoffman* v. *City of Quincy*, 4 Wallace, 535; *Riggs* v. *Johnson County*, 6 Wallace, 166; *Rees* v. *City of Watertown*, 19 Wallace, 120.

For example, and by way of illustration of the above rules, by act of 5th February, 1859, the charter of the city of Little Rock was so amended, as to authorize and empower said city to subscribe for and take stock in her corporate name, in any of the railroads upon whose line of route or terminus said city is situated or connected, and to issue her bonds, and to levy and collect all necessary taxes to pay the interest or principal of the same, etc.

If any bonds were issued by the city under this act, and any of them are now outstanding and unpaid, it may be that the city has power to levy a tax to pay them, in addition to the power to levy five mills to pay other debts existing at the time of the adoption of the present constitution. But it does not appear that any part of the ten mills levied by the ordinance before us was levied to pay bonds issued under the act above referred to.

It is insisted by counsel for appellant that the answer of the appellee setting up matters *de hors* the face of the ordinance in support of the levy, should be disregarded. That the tax must be quashed or affirmed on the face of the record returned to the Circuit Court on certiorari. Such was the well-established rule. *Jefferson County* v. *Hudson*, 22 Ark., 595; *Redmond* v. *Anderson*, 18 ib., 449; *Miller* v. *McCullough*, 21. ib., 426; *Dicus* v. *Bright*, 23 ib., 107; Cooley on Taxation, 535.

But by a recent statute there has been an attempt to enlarge the office of the writ of certiorari issuing from the Circuits Courts. It provides that the Circuit Courts " shall have power to issue writs of certiorari to any officer or board of officers, or any inferior tribunal, of their respective counties, to correct any erroneous or void proceedings, and to hear and determine the same," etc.

That " affidavits may be read on such applications, and evidence *de hors the record* may be introduced by either party on the hearing. The record of any such inferior judicial tribunal shall be conclusive as far as the same may extend, but the acts of any executive officer, or board of such, shall only be *prima facie* evidence of their regularity,"· etc. Gantt's Digest, secs. 1196, 1197.

In what cases, and, to what extent, this statute enlarges the office of the writ of certiorari, or modifies the former practice, we have had no occasion heretofore to decide.

If the appellee had no right in this case, under the above statute, to file an answer setting up matters *de hors the record,* the appellant should have moved to strike it out, instead of demurring to it.

Without attempting to construe the statute in this case, we shall treat the facts set out in the answer, in support of the tax ordinance, as admitted by the demurrer, and give the appellee the benefit of them.

The second item in the levy made by the ordinance is : *"For outstanding certificates issued to the Memphis and Little Rock Railroad, three mills."*

The answer avers in a general way that the city had authority to issue these certificates, and to levy a tax to pay them. When they were issued, or under what law, is not stated.

In Exhibit No. 2 to the answer is a statement of the assessed value of the personal and real property of the city, subject to

taxation, for the year 1875, and the debts of the city, in which the following items appear:

Amount of Memphis and Little Rock Railroad certificates, due January 1st, 1876:

Principal..............................$28,167 61
Interest................................ 11,411 56
      Total................... ————————$39,579 17

No doubt from the amount of interest put down as having accrued upon these certificates to the 1st of January, 1876, they were issued before the adoption of the present constitution, and perhaps after the passage of the general act of incorporation of 9th of April, 1869, which limited annual assessments for the payment of debts existing at the time of making the levy to five mills on the dollar. Gantt's Digest, sec. 3295.

What these certificates were issued for, the city has not thought proper to disclose in her answer, nor is it pretended that they were issued under any special act authorizing the city to issue them, and to levy a tax to pay them, so that the power to tax became part of the contract. On the contrary, it was conceded by counsel for the city, in the argument, that these certificates stand on no higher footing than other general debts of the city existing at the time of the adoption of the present constitution; at least, that no facts were disclosed in this case to put them on a higher footing.

The third item in the levy made by the ordinance, is: "*For bills payable for United States currency borrowed—two mills.*"

The answer does not state, nor does the ordinance on its face show, when these "bills payable" were made by the city, or when or for what purpose the currency was borrowed, The answer as to the indebtedness for which the two mills levy was made is as indefinite as it is to the certificates just disposed of.

In Exhibit No. 2, to the answer, the following statement appears:

Amount due for bills payable, to-wit:

|  |  |
|---|---|
| Due Dec. 3, 1875, Chas. Jacobs, Jr., ...$7,370 00 |  |
| Due Ap. 18, 1876, Goodyear R. & Co., 2,571 52 |  |
| Due March 20, 1876, Miller & Penzel... 617 78 |  |
| Due July 1, 1876, Wm. Emery........... 550 00 |  |
| Due Aug. 6, 1876, Silsby Mfg Co., ..... 404 83 |  |
|  | ————$11,514 13 |

The present constitution was proclaimed adopted October 30, 1874. There is nothing in the body of the answer, or in the exhibit, showing that any item of this indebtedness existed at the time of the adoption of the constitution.

The assessed value of the real and personal property of the city, subject to taxation for the year 1875, is stated in Exhibit No. 2 to be $6,658,530, and a levy of two mills to the dollar on that sum will produce the gross amount of $13,317.00, and perhaps a net sum sufficient to pay the total amount of the "bills payable" as footed up in the statement copied above.

It would, perhaps, have been better and safer for the city in making such a levy, to have shown on the face of the ordinance making the levy, that these "bills payable" were debts existing at the time of the adoption of the present constitution, in order that her authority to levy the two mills to pay them might be apparent. But it is remarkable, that though she availed herself of the advantage of an answer, in which she attempted to set up matters *de hors* the face of the ordinance, in support of the levy, she failed to show that all, or any of these debts in fact, existed at the time of the adoption of the constitution. Her schedule of the debts, as above copied, is as defective as the allegations of the answer, as to the time when these debts were contracted.

How far the courts may indulge in presumptions to uphold tax levies made by councils of municipal corporations, acting under delegated, and limited authority, we do not find it necessary to decide in this case.

The fourth and last item in the levy made by the ordinance is "*For United States judgments, five mills.*"

In relation to this item, the answer states that this five mills levy was made for the purpose of paying United States judgments against said city, one of which was in favor of the Peoples Insurance Company, amounting to over eight thousand dollars, and the other judgment of the United States Court, was as follows:

The answer then proceeds to set out facts in relation to the second judgment referred to, but says nothing further as to the first.

When, and on what the judgment in favor of the Peoples Insnrance Company was rendered, does not appear from the answer.

The material facts in relation to the other judgment, as disclosed by the answer, and exhibits, are as follows:

The answer alleges, in substance, that on the 10th day of April, 1874, John I. Bagley recovered a judgment in the Circuit Court of the United States for the Eastern District of Arkansas against the City of Little Rock for the sum of $41,422.90 debt, and $3,424.22 damages, with interest on debt and damages at ten per cent. per annum from the date of the judgment until paid.

That on the 19th of April, 1875, the court awarded a peremptory mandamus in favor of the plaintiff in the judgment, to the City Council, commanding it to proceed, on the ———— day of October, 1875, etc., to levy a tax, payable only in United States currency, on all the taxable property in said city to be paid during the current fiscal year, sufficient to pay the sum $23,595.01, and costs, etc.

That said judgment was founded on a contract between the City and the assignors of Bagley, payable in United States currency, and that said Council was bound, outside of its ordinary

powers of taxation, to levy a sufficient tax to pay the indebtedness that had accrued on the contract, and made the levy of five mills in obedience to the mandate of the Circuit Court of the United States, etc.

When and for what the contract between the City and Bagley's assignors, on which the judgment was rendered, was made, is not disclosed in the body of the answer. If the City Council was bound and had the power to levy a sufficient tax, "outside" of its ordinary taxing power, to pay the whole debt, as alleged in the answer, it did not think proper to refer to the source of such "outside" taxing power, nor to indicate why it was that the Federal Court only commanded it to levy a part of Bagley's judgment instead of the whole.

But the Council made a transcript of the judgment and the order for the mandamus exhibits to the answer, and from them we are enabled to get some additional facts.

From the transcript of the judgment it appears that Bagley was the assignee of J. B. Walton & Co., to whom the City was indebted on the 8th of August, 1873, in the sum of $51,422.90, and after allowing the City a credit for $10,000 judgment was rendered, by her consent, in favor of Bagley for balance of debt and interest at ten per cent. from the 8th of August, 1873, making the sums above stated from the body of the answer.

What answer the City made to the alternative writ of mandamus does not appear.

From the order of the court awarding the peremptory mandamus, it appears that Bagley, the plaintiff in the judgment, demurred to the answer, and the court sustained the application for a peremptory writ "so far as relates to the sum of $23,595.01, being the sum of money collected by the said defendant from the owners of adjacent property to the improvement in the pleadings mentioned, under the special tax levied by said defendant for that purpose."

It further appears from the recitals in the order for the peremptory writ, that J. B. Walton & Co., the assignors of Bagley, were contractors with the city for the building of a wooden pavement, commonly known as the Richardson pavement, on Markham street, in said city, and that the judgment in favor of Bagley (above stated) was rendered against the city for the amount due upon the contract, and that the City Council had levied a tax, under a provision of the charter of the city, upon the property adjacent to said improvement, and for the alleged purpose of paying the amount due for said pavement, and had collected from such adjacent property, or the owners thereof, by means of such levy, the said sum of $23,595.01, and had neglected and refused to pay the same over to Bagley.

No doubt the city made the contract with J. B. Walton & Co. to pave Markham street, under a section of the general act of incorporation of 9th April, 1869, which provides that "they (cities, etc.) shall have power to lay off, open, widen, straighten, extend, establish, to improve, and keep in order and repair, and to light, streets, alleys, etc., etc., and to assess and collect a charge on the owner or owners of any lot or land, or on lots or lands, through or by which a street, alley or public highway shall pass, for the purpose of defraying the expenses of constructing, improving, repairing or lighting such street, alley or public highway, to be in proportion, either to the feet front of lot or land abutting on such street, alley or highway, or to the value of such lot or land as assessed for taxation under the general law of the State, as such municipal corporation may, in each case, determine." Gantt's Digest, sec. 3228.

It appears that Bagley asked for a mandamus to compel the city to levy a tax to pay the whole amount of his judgment, but clearly the court did not, and could not order a levy to pay the judgment under the provision of the charter above copied, because the city had already levied such tax to pay the paving debt.

But it seems that the city had collected, by means of such special tax, the sum of $23,595.01, which she had failed to pay over to Bagley on his judgment.

We can hardly suppose that the city had the sum so collected on hand and in her treasury at the time the mandamus to raise the same amount by general tax was awarded, for if that had been made to appear to the court, it is but reasonable to suppose that the court would have taken some proper step to compel the city to pay the money over, instead of ordering the city to collect the money again by a general levy.

We regret that the city has not thought proper to disclose in her answer in this case, fairly and fully, all the facts upon which the Federal Court ordered her, by mandamus, to collect again, by a general tax, the sum which she had already collected by a special tax upon the property abutting the Markham street improvement.

We must suppose, however, in justice to the Federal Court, that it was made to appear to it that the sum so collected was not on hand, in the city treasury, but had been in some way administered or appropriated in the affairs of the city for the benefit of the citizens and tax payers generally, otherwise the court would not have ordered the city, by mandamus, to make a general levy to reimburse the amount.

We do not see how the sum so collected, and appropriated to the general purposes of the city, could stand upon any higher footing than a debt existing against the city at the time of the adoption of the present constitution.

The peremptory mandamus to compel the city to levy a general tax to pay the $23,595.01, was awarded on the 19th April, 1875. Before then the present constitution had gone into force, and the revenue act of March 5th, 1875, had been passed, by both of which the city was limited to a tax of five mills, in any

one year, to pay debts existing at the time of the adoption of the constitution.

There was no special tax act that could have entered into and formed part of the paving contract but the section of the general act of incorporation copied above, under which the city had made a levy before the mandamus was awarded.

The general act of incorporation, which was passed before the paving contract was made, limited the taxing power of the city to pay debts, to five mills annually, and the constitution did not abridge this power as to debts existing at the time of its adoption.

The Circuit Court of the United States has no taxing powers and of course could impart none to the city of Little Rock. It can exercise no taxing power except that which it derives from the Constitution and laws of the State. Grant that the City Council acted in bad faith in not paying over to Bagley the amount collected under the special paving tax, and in appropriating it to other purposes (if such was the case) that bad faith did not increase its taxing power, nor authorize the Federal Court to compel it to exercise a taxing power which it had not under the Constitution and laws of the State. Nor will we suppose that the Federal Court exercised any arbitrary power in the matter, or awarded a mandamus against the City Council to compel it to levy a tax which it had not plainly the power, under the Constitution and laws of the State, to levy, and which it was not in duty bound to levy, for such would be an abuse of the writ of mandamus.

In *Supervisors* v. *United States*, 18 Wallace, 77, Mr. Justice Strong, delivering the opinion of the Supreme Court of the United States, said: "It is very plain that a mandamus will not be awarded to compel county officers of a State to do any act which they are not authorized to do by the laws of the State

from which they derive their powers. Such officers are the crea-
tures of the statute law, brought into existence for public pur-
poses, and having no authority beyond that conferred upon them
by the author of their being. And it may be observed that the
office of a writ of mandamus is not to create duties, but to com-
pel the discharge of those already existing."

The Supreme Court of the United States has in no case upheld
the power of the Circuit Courts to award a mandamus to munic-
ipal officers of a State to levy a tax to pay a judgment, unless
there was a law of the State authorizing the levy of the tax.

*Commissioners of Knox County* v. *Aspinwall*, 24 How., 376;
*Hoffman* v. *City of Quincy*, 4 Wallace, 535; *City of Galena* v.
*Amy*, 5 ib., 705; *Riggs* v. *Johnson County*, 6 Wallace, 166;
*United States* v. *Council of Keokuk*, ib., 514; *Morgan* v. *Town
Clerk*, 7 Wallace, 612; *Supervisors* v. *Rogers*, ib., 175; *Butz* v.
*City of Muscatine*, 8 Wallace, 578; *Heine* v. *Levee Commissioners*,
19 Wallace, 655; *Rees* v. *City Watertown*, ib., 107; *Supervisors* v.
*United States*, 18 Wal., 71.

Judge Cooley says: "The Federal courts have no general
powers to issue the writ of mandamus to compel the performance
of duties under the State tax laws. That belongs to the province
of the State courts. It has, nevertheless, been held in many
cases that they might issue the writ in order to compel munici-
palities to levy taxes for the satisfaction of judgments which
have been rendered in such courts, and which the local authori-
ties neglected or refused to provide for by taxation, though clothed
by law with full authority so to do." Cooley on Taxation, 522.

We regret that the learned judges who awarded the mandamus
in question did not leave a written opinion, showing under what
statute they ordered the city to levy the tax to pay a part of
Bagley's judgment. We have been able to find no law under
which the mandamus could have been awarded, except that au-
thorizing the city to levy as much as five mills to pay debts

existing at the time of the adoption of the present Constitution, and the counsel for the city, though interrogated during the oral argument, were able to refer us to no other.

When the city exercised its taxing power, under the five mills act, in obedience to the mandate of the Federal court, it exhausted that taxing power just to the same extent that it would have done had it exercised the power voluntarily and without the mandate. In the one case it does what is assumed to be its legal duty, under compulsion, and in the other it discharges the same legal duty, and exercises the same powers, of its own volition.

We do not appreciate the legal logic of the counsel for the city when they tell us that the City Council levied five mills to pay on the Federal judgment, because the Federal court ordered it to do so, and levied five more mills to pay other debts because it had the power by law to make the levy. We will not assume that the Federal court acted arbitrarily, and ordered the City Council to make a levy which the law did not authorize it to make.

The city levied, for the year 1875, five mills for general purposes, and, in effect, ten mills to pay debts, making fifteen mills, and amounting, upon the assessed value of the taxable property in the city, to the large sum of $99,877.95.

Though the fourth item of the levy is to pay "United States judgments," the answer claims that the five mills was levied under the mandate of the Federal court, awarded on Bagley's judgment, and the counsel for the city say that this levy will not yield a net sum larger than the amount ordered by the mandamus to be levied for Bagley. Five mills upon the assessed value of the taxable property of the city (as stated in Exhibit No. 2 to the answer) will produce the gross sum of $33,292.65.

The amount ordered levied for Bagley is $23,595.01 and costs. Whether, after deducting the expense of collection, delinquencies, etc., there will be more than enough left to pay Bagley, we do not know.

The time limited by law for the payment of the taxes of 1875 will expire in a few days, and there is not time for the city to make a new levy if the whole levy were quashed.

The authority of the city to levy the five mills " for general purposes " is not questioned. The excess of the levy is in the items to pay debts, amounting to ten mills.

The city claims to have levied five mills in obedience to the mandate of the Federal court, and we have every disposition to respect that mandate, and will attempt to interpose no obstruction to its being obeyed by the City Council.

It follows that the two remaining items of the levy—the one " for outstanding certificates issued to the Memphis and Little Rock Railroad, three mills," and the other " for bills payable for United States currency borrowed, two mills," must be quashed.

This gives to the Federal court's judgment creditor, armed with the mandamus, the lion's share of the levy of 1875, to pay debts of the city, and postpones other creditors whose claims may be fully as meritorious as the Richardson pavement debt, until the City Council can legally make another annual levy to pay debts existing at the time of the adoption of the present Constitution.

This may seem unjust, but we cannot help it. We cannot undertake to say that the Circuit Court of the United States had not jurisdiction to award the mandamus, nor that in exercising its jurisdiction it committed an error, for this court has no appellate jurisdiction over that court. The city had the right to appeal from its judgment awarding the mandamus to the Supreme Court of the United States, and failing to do this, no

complaint it can make to us of the effect of the judgment awarding the writ can be made of any avail.

Perhaps if the city had shown in response to the alternative writ, that she owed other matured debts, existing at the time of the adoption of the Constitution, equally as meritorious as Bagley's; that her power to pay such debts under the laws of the State was limited to five mills annually, and that she could not pay them all by one levy, the court having a discretionary power in the matter of awarding a mandamus, might have so modified its mandate as to leave her a margin within her taxing power to have levied for the benefit of other ·creditors as well as Bagley, and to repeat the process from year to year until all were paid.

But, be this as it may, we cannot permit the taxpayers of the city to be burthened by a levy unwarranted by the Constitution and laws of the State.

The judgment of the Circuit Court must be reversed, and a judgment entered here, quashing the two items in the levy indicated above, and an order made to restrain the appellee, Rottaken, the sheriff, from collecting those two items, and the judgment certified to the court below.