Terrell, C. J.
 

 On September 2, 1930, this Court granted its alternative writ of mandamus directed to the City-Commission of the City of Sanford, Florida, commanding said Commission to convene without delay and revise its budget for the fiscal year 1930-31 so as to include therein and to appropriate for the payment thereof, a sum equal to all past due principal and interest of the bonds and certificates of indebtedness of said City as described in said alternative writ including all principal and interest of said
 
 *1316
 
 bonds and certificates of indebtedness which will mature and accrue prior to the end of said fiscal year and to levy on all the taxable property, within said City a tax sufficient to produce the sum so appropriated.' The alternative writ further commands the Mayor, City Clerk, Tax Assessor, and Tax Collector of said City to do and perform all other acts and deeds- required by law to carry out the commands of said writ.
 

 October 2, 1930, on motion of Relator, the alternative writ was amended to forbear the levy of any tax to cover the
 
 principal
 
 of bonds or certificates of indebtedness past due or to mature prior to September 30, 1931, but in lieu thereof to require the levy of a tax sufficient when collected to pay, (1) All past due interest represented by coupons on said bonds and certificates of indebtedness, (2) All interest represented by coupons becoming due and payable during the said City’s fiscal pear commencing October 1, 1930, and (3) All interest at the contract rate from their respective dates of maturity to September 30, 1931, on bonds and certificates of indebtedness of said City which are now past due and which will mature during, the fiscal year ending September 30, 1931 (the said last named interest not represented by coupons).
 

 To the alternative writ as amended the Respondents filed their joint and several return to which the Relator has demurred and has moved to strike designated portions thereof. The cause now comes on to tbe disposed of on the issue raised by the demurrer to and motion to strike portions of the return to said alternative writ.
 

 The demurrer to and motion to strike portions of the return to the alternative writ raised two primary questions, the first of which is, that parties other than the Relator have brought suits in the United States District Court
 
 *1317
 
 for the Southern District of Florida challenging the validity of the bonds described in the alternative writ.
 

 It is a well settled general principal of law, that the plea of a prior action pending' .will abate a later action or suit in the same Court or other Court of like jurisdiction if the parties are the same and both suits are predicated on the same cause of 'action, T C. J. 45 and cases cited, 1 R. C. L. 10. The rule is also well settled that the pendency of a prior suit in a Federal Court is not ground for the abatement of a like suit in a State Court even though both suits are. brought in the same State by the same parties and for the same" cause. 1 C. J. 87, 1 R. C. L. 18.
 

 On the basis of the second rule as thus detailed the plea of a prior action pendiing must fall because the prior action was brought in the Federal Court while the instant cause was initiated in this Court. The said plea falls before the first rule for the following reasons: (1) The parties to the suit in State and Federal Courts are different, (2) It is not shown that the suits in the State and Federal Courts are brought for the same purpose, and (3) No facts are set up on which the nature or the purpose of the Federal suits may be determined. For these reasons and others apparent on the record the defense of another suit pending is without merit. Horter v. Commercial Bank and Trust Company, 99 Fla. 678, 126 So. R. 909; Davant v. Weeks, 78 Fla. 175, 82 So. R. 807; Michigan Railway Company v. Detroit Railway Company, 178 Mich. 230, 144 N. W. R. 696, affirmed in 240 U. S. 564, 36 Sup. Ct. R. 424, 60 L. Ed. 802; International and G. N. R. Company v. Barton, 24 Tex. Civ. App. 122, 57 S. W. R. 292; Holmes County Mississippi v. Burton Construction Company, 272 Fed. R. 565; Kesterson v. Southern Railway Company, 146 N. C. 276, 59 S. E. R. 871; Kline v. Burke Con
 
 *1318
 
 struction Company, 260 U. S. 226, 67 L. Ed. 226, 43 Sup. Ct. R. 79.
 

 The second primary question raised by the pleadings herein may be stated as follows: Is the fact that misfortune or poverty have befallen a municipality any defense for it to refuse to levy a tax sufficient to pay the principal and interest on its outstanding bonds as they mature when the statute authorizing them requires that this be done, and has this Court the power to modify the duty imposed on the city by such statutes.
 

 The bonds and certificates of indebtedness on which Relator seeks to require the levy of a tax sufficient to pay current and past due-interest aggregate more than six and one-half ¡million dollars, were negotiated over that term of years from 1910 to 1928 as provided by the city charter of Sanford (Chapter 9897 Acts of 1923 Laws of Florida), and Chapter 9298 Acts of 1923 Laws of Florida (Section 3022 Et. Seq. Compiled General Laws of 1927) and Chapter 11855 Acts of 1927 Laws of Florida, authorizing the issuance of refunding bonds by cities and other governmental entities. The past' due and current interest represented by coupons attached to these bonds and certificates of indebtedness aggregate more than eight hundred thou-■sand dollars and the assessed valuation of the City of Sanford is ten million nine hundred thousand dollars.
 

 As a defense to the command of the alternative writ to levy a tax to pay current and past due interest, Respondent's say that additional large levys have been made to meet operating expenses of the city government and to pay outstanding obligations of the City previously incurred, that t'he assessed valuations in the City have fallen from more than twenty-one and one-half ¡million dollars in 1927 to their present valuation of ten million nine hundred thousand dollars, that the percentage of tax eollec
 
 *1319
 
 tions during t'he past ten years has run from 56 to 97 per cent., that the population of Sanford is now ten thousand whereas in 1926 it was thirteen thousand, that only one thousand one hundred and ninety-six of its citizens are taxpayers, that the City of Sanford is in Seminole County, Florida, wherein it is assessed sixty-eight and one-half mills State and County tax on a valuation of three million dollars, that the City of Sanford as a municipality has suffered a loss of more than one million dollars and its people individually have suffered losses aggregating five million dollars through bank failures the last three years, that many of its business firjms have gone into bankruptcy, others háve withdrawn from business in Sanford, a number of homes and apartment houses have been sold at foreclosure and others have been razed with a view of reducing taxes. It is also alleged that within six blocks of the post office .at Sanford there are sixty-six vacant stores and that in Sanford proper there are four hundred vacant homes, that the various stocks of merchandise in Sanford have been decreased fifty per cent. th,e last four years, that the Atlantic Coast Line Railway shops which employ a large number of men have for some time been running on fifty per cent, normal output and daily pay roll, that business and residential property has little or no value, that the number of gas meters, water meters, electric meters, telephones and receipts from the post office have materially decreased the last three years, .that very few building permits are being issued, and that' the City is suffering from other misfortunes not necessary to recite. It is asserted that to require the City of Sanford, in the face of this defense, to levy a tax as required by the alternative writ will result in forcing many who are now paying taxes to abandon t'heir property and that it will ultimately break, down the morale of its citizenship.
 

 
 *1320
 
 This is not a propitious showing. In fact when viewed in the large it presents a situation that has aroused the deep concern of this Court, but on thorough analysis we are impressed with its compensating features. It is not shown or alleged that the condition at Sanford was induced by any social or physical cataclysm devastating in its consequences. It was argued at the bar that it was largely a result of the “boom” of 1925 and the “fly quarantine” of 1928 and 1929. The record discloses, however, that every bond issue about which the City now complains was voluntarily assumed and negotiated under the aegis of legislative fist after the people of Sanford were fully advised of the purpose and consequences of their issue. The record further discloses that the proceeds of the bonds were used for authorized municipal purposes and that the City has since their issue and is now enjoying the product of these bonds in improved streets, improved water front, improved drainage, improved utilities, improved valuations, municipal ball and golf parks and other municipal and general improvements. It is also shown that these bonds were validated by Court decree, that their payment was guaranteed by the taxing power or ability of the City and while it may be that this power has been somewhat impaired it is still substantial and is in fact responding to other demands out of all proportion to the extent to which it proposes to respond to its obligation to meet its bonded indebtedness, the record disclosing that the Respondents have assessed a total tax of twenty mills for all purposes against the City and that notwithstanding its heavy bonded obligation it proposes to appropriate less than five of said twenty mills to apply on its bonded debt. If the proceeds of these bonds were in part improvidently used for luxuries that the City could well do without, the City was responsible. It was no affair of the bondholder nor is it a valid defense for refusal to pay.
 

 
 *1321
 
 . To contend that Sanford’s Unfortunate plight is a product of boom times is beside the question, when it, like many other eofmmunities in Florida, is struggling from its indiscretions committed during that period. Boom time was a time when Sanford, like other municipalities, was obsessed with metropolitan visions and he who refused to encourage the obsession w.ás indicted for being a “knocker,” a reactionary, and opposed to progress. It was a time when municipality and citizen alike were actuated by reckless standards of- extravagance that spread like a virus throughout every class of the social order. Municipal and personal behavior were in the teeth of every known law of economics and so completely did the mania for gathering where we had not sowed and spending the increment overcome us, that our very,conduct impressed the stigma of contempt on the old time virtues of thrift, integrity, toil, and moderation. Suddenly this “golden flood of prosperity” collapsed and- now with reverses pending, money tight, and our obligations out and due, with the greatest potential future of any people in any age, there is interposed in this. Court a plea too poor to pay. We are aware of no law that would permit one in business to interpose such a plea because of his misfortune even though his venture proved a disastrous failure. Certainly no municipality can afford to live by a lower standard of civic virtue than is required of its citizens.
 

 So much for the status of the cause presented, now let us examine the law. The applicable law to the payment of the bonds in question is embraced in Sections 62 and 123 of Chapter 9897 Acts of 1923, being a part of the City Charter of Sanford, and-Chapter 9298 Acts of 1923 Laws of Florida (Section 3022
 
 et seq.
 
 Comp. Gen. Laws of 1927) and Chapter 11855 Acts of 1927 Laws of Florida. Section 62 of Chapter 9897 Acts "of 1923 in effect provides
 
 *1322
 
 that the City of Sanford may levy and collect annually
 
 such special taxes as may be required to meet any outstanding indebtedness with interest.
 
 Section 123 of the same Chapter provides that the City Commission
 
 shall levy and collect annually a tax sufficient to pay the principal and interest of any and dll utility bonds as the same respectively become, due and payable
 
 and Section Twelve of Chapter 9298 Acts of 1923 provides for special assessments against the property benefited to pay the principal and interest of the bonds authorized for the improvement, and then in the event said special assessments are not collected in season to pay the principal and interest of said bonds, the municipality
 
 shall levy and collect a tax on all property in the City for that purpose.
 
 Section Four of Chapter 11855 Acts of 1927 provides that there shall be levied annually upon all taxable property therein (within the city issuing such bonds) a tax sufficient to provide for the
 
 payment of said bonds and interest thereon at maturity.
 

 It would be difficult to express the duty of the City Commission in the matter of discharging principal and interest on its bonds in clearer, more comprehensive language. They have imposed on them by each Act a clear mandatory legal duty to levy a tax annually sufficient to pay their bonds and interest thereon at maturity. This duty rests on the obligation of the City to pay its debts and no discretion within the limit of the performance of that duty duty can be exercised; They are given no latitude whatever to do less or different from the plain requirement" of the law. County Commissioners v. King, 13 Fla. 541; State v. Board of County Commissioners, 17 Fla. 418; Ray v. Wilson, 29 Fla. 342, 10 So. R. 613; County Commissioners of Escambia County v. Board of
 
 *1323
 
 Pilot Commissioners of Port of Pensacola, 52 Fla. 197, 42 So. R. 697, 38 C. J. 776.
 

 Bnt the City contends that by reason of its depressed and poverty stricken condition it should not be required to levy the tax as required by 4he alternative writ. We have searched diligently and have found no authority supporting the view that poverty may be successfully interposed as a defense to the payment of lawful obligations honestly made. This- Court has taken its position squarely against such a defense. In County Commissioners v. King,
 
 supra,
 
 the County Commissioners of Columbia County were required to levy a tax sufficient to pay interest on its bonded indebtedness. As a defense, the County urged' that more than half of the taxable area of the County had since the issue of the bonds been detached from it by the State in the creation of new Counties, that two-thirds of its taxable value was in slaves which had been freed, that its farms and homes were in ruins and worthless as a result of the Civil war and that in consequence of such poverty and distress on the part of its people, an adequate tax to pay ’the interest on its bonds would be unduly burdensome and uncollectable, but this Court held that Columbia County could not under such a plea be relieved of the burden that it had in law and good faith assumed.
 

 In Klelmm v. Davenport, filed August 5,1930, this Court examined and reaffirmed the doctrine announced in Columbia County v. King
 
 supra
 
 using the following language:
 

 “It may be that the act brought in question was passed under the afflatus of unusual conditions and that by reason of the liberal exercise of its provisions and the blasted hopes of anticipated profits therefrom to now enforce an ad valorem tax to pay the bonds will result in hardships and inequalities. In
 
 *1324
 
 fact, it is asserted by the defendants in error that it it will amount to confiscation, the destruction of real estate values in many communities and making it impossible to collect taxes thereon. This contention would have been pertinent and should have received serious consideration if it had been urged in resistance to the issuance of the bonds; but when they have been issued, validated, and sold, and the proceeds applied to pave the streets of the City' and to enhance the value of the property of its citizens and have contributed to its general betterment, the bonds have matured and pay-time has arrived such a contention is ill-timed and offers no bar for a Court of justice to decline to administer a valid law.”
 

 The judgment of this Court in County Commissioners v. King and Klemm v. Davenport is supported by Judge Cooley in his work on taxation in these terms:
 

 “It sometimes happens that a municipality is found to have contracted indebtedness to ’ an extent that is felt to be extremely burdensome, and then a local sentiment may spring up in favor of refusing to- raise the necessary taxes for its payment. The purpose may be either to avoid the payment altogether, or to postpone it for a time, or, perhaps, to force a compromise with creditors and an abatement. Whatever may be the purpose, the refusal to levy taxes to meet municipal obligations according to terms is a public wrong.” Cooley’s
 
 Taxation
 
 (2nd Ed.) page 75.
 

 The authorities in this Country where the question has been litigated or treated approve this rule. Vooris v. Houston 70 Tex. 331, text 342, 7 S. W. R. 679; City of Austin v. Cahill 99 Tex. 172, 88 S. W. R. 542, 89 S. W. R.
 
 *1325
 
 552; United States v. Village of Kent 107 Fed. 190; City of Cleveland, Tennessee v. United Stated States 166 Fed. 677; Coy v. City Council of Lyons 17 la. 1, 85 Am. Dec. 539; Sibley v. Mobile, Fed. Case 12829; United States v. Jefferson County, Fed. Case 15472; City of Galena v. Amy 5 Wall (U. S.) 705, 18 L. Ed. 560; Morgan County v. Allen 103 U. S. 515, 26 L. Ed. 583; Riggs v. Johnson Co. 6 Wall (U. S.) 166. 18 L, Ed. 768; State v. City of Milwaukee 25 Wis. 122; Vance v. City of Little Rock 30 Ark. 435 text 440; Beckwith v. English 51 Ill. 147; Western Savings Fund Society v. Philadelphia 31 Pa. St. 175; White v. Mayor and Council of Decatur 119 Ala. 476, 23 So. R. 999; 38 C. J. 772, 18 R. C. L. 281; Dillon on
 
 Municipal Corporations
 
 (Fifth Ed.) Vol. 4, page 2688; McQuillan:
 
 Municipal Corporations
 
 (Second Ed.) Vol. 5, page 978; Vol. 6, pages 298 and 628;
 
 Limitations of Taxing Power
 
 by Gray, page 516.
 

 The reason for the rule is patent. The State has authorized the City of Sanford to issue its bonds and exercise its power of taxation to an extent necessary to pay the principal and interest thereon when they mature. When issued and negotiated they become a contract between the City and the holder.-' The power to tax is the very essence of the bonds. In the absence of a legal right to enforce this power they would be worthless. Under the law of this State the property in the municipality is. not bound in like manner as the property of an individual under a mortgage for their payment but when issued under such Acts as those brought in question the Act itself becomes a part of the contract, protected from invasion by the Federal Constitution, (Article One, Section Ten) as much so as if it h,ad been written at length on the face of the bond. Such statutes or t'he-rights of bondholders acquired under them cannot be repealed or abrogated by any law of the State statutory or constitutional, until the
 
 *1326
 
 obligations incurred under them are paid and discharged according to their terms. The law cannot be disregarded because it imposes a heavy burden on one of the parties to a suit, if it can the sanctity of contracts is nothing more than the shadow of the substance. Supporting this view in United States v. Jefferson County,
 
 supra,
 
 the Court said:
 

 “It has long been settled by repeated decisions of the Supreme Court of the United States, and of many of the states, that the usual provision contained in acts authorizing counties to issue negotiable bonds, making it the duty of the proper county court', or board, to levy an annual tax sufficient to pay the principal and interest of such bonds as the same fall due, enters into and becomes a part of the obligation of the contract between the county and the holder of the bonds; and the power and duty of the proper county authorities to levy the tax required by the terms of the act authorizing the issue of the bonds cannot subsequently be withdrawn, so long as a single bond remains unpaid.”
 

 This view is supported by the following authorities:. County Commissoners v. King, 13 Fla. 451; United States v. City of Quincy, 4 Wall. (U. S.) 535, 18 L. Ed. 483; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. R. 1190, 30 L. Ed. 1161; Cooley on Taxation (4th Ed.) paragraphs 69, 131, 136, and cases cited; Board of Education of Hawesville v. Louisville, H. & St. L. Ry. Co., 110 Ky. 932, 62 So. W. R. 1125; Vance v. Little Rock, 30 Ark. 435; Welch Water, L. & P. Co. v. Town of Welch, 64 W. Va. 373, 62 So. E. R. 497; Dillon:
 
 Municipal Corporations
 
 (5th Ed.), Vol. 4, page 2688; Grayon:
 
 Limitations of Taxing Power,
 
 pages 515, 516, and cases cited; McQuillan:
 
 Municipal Corpora
 
 
 *1327
 

 tions
 
 (2nd Ed.), Vol 2, page 297; Beckwith v. English, 51 Ill. 147; State v. City of Milwaukee, 25 Wis. 122; United States v. Treasurer of Muscatine Co., Federal Cases No. 16538. The question of debt limit or power of the City to issue the amount of bonds shown to be outstanding of which the world is on notice is not raised.
 

 But the respondent, City of Sanford, contends that if this Court should determine that the relator is entitled to a peremptory writ the tax so ordered to be levied should not be embraced in a single levy but should be spread over a period of years. By the facts shown to exist, this contention necessarily implies that this Court by the exercise of its equity power, may modify a legislative act and thereby impair the contract between the respondent and its bondholders. The authorities generally hold that a court may, by virtue of its broad equity powers, spread a tax levy over a period of years when levied to satisfy
 
 a judgment
 
 obtained against a governmental entity or when levied under an act allowing some range of discretion in the taxing power. City of Cleveland, Tennessee, v. U. S., 166 Fed. R. 677; Deere v. Board of County Commissioners of Rio Grande Co., 33 Fed. R. 823; Deuel County, Nebraska, v. First National Bank, 86 Fed. R. 264; Phelps v. Lodge, 60 Kan. 122, 55 Pac. R. 840; State v. School Dist. No. 7, 22 Neb. 700, 36 N. W. R. 278; City of Little Rock v. United States, 103 Fed. R. 418; Graham v. Quinlan, 207 Fed. R. 268; State v. Wier, 33 Neb. 35, 49 N. W. R. 785; Village of Oshkosh v. Nebraska, 20 Fed. R. (2nd Ed.) 621; People ex rel. Akin v. Board of Supervisors of Adams Co., 185 Ill. 288, 56 N. E. R. 1044.
 

 The statutes providing for the bonds and tax levy under review, permit of no discretion in the taxing power short of a levy sufficient to pay principal and interest when due but they mandatorally require that this amount be levied. This is not a suit seeking to require a tax levy to satisfy a
 
 *1328
 
 judgment against the City because the bonds held by relator have not been reduced to judgment. It is on the other hand a suit to enforce a clear legal right provided by statute and which respondents are under contract to perform. In their amended alternative writ, relators forbear all past due principal and only ask for a tax levy ample to pay past due and current interest. It is true that such a levy will incur a heavy burden for the first year but this arises from the fact that the officers of the City of Sanford failed and neglected to levy annually for the preceding year a tax sufficient to pay principal and interest when due. The tax payers of Sanford have therefore escaped the payment of taxes when they should have been paid and which they were constitutionally liable for. The record does not show that the payment of. this accumulated tax in the first installment will make the burden confiscatory and after this payment it should be no heavier than many other communities are paying.
 

 The power to tax is legislative, it cannot be conferred on the judiciary. The amount of a tax which can be imposed on a community without being confiscatory depends on many elements but ultimately it is a question of fact that cannot tbe determined except by proof. It is not shown in this case that Respondent has bonded beyond its ability to pay in fact, on the ground of poverty its defense is not near so strong as was made by the County in Columbia Co. v. King,
 
 supra,
 
 while its taxing power is much superior to Columbia County, but if it was not such a defense is a matter to be directed by the City to its creditors to secure such abatement or indulgence as it can, in the way of reducing its volume of indebtedness. It is not a matter over which this Court has any control. With full knowledge of its taxing ability and the terms of the controlling statutes the City has made its contracts.
 
 *1329
 
 These contracts are protected by both State and Federal Constitutions and this Court is powerless to relax the terms of the controlling statutes. To both the citizen and his government 'the right to contract is the most valuable right known to the law. The Constitution guarantees its inviolability. It is the duty of every citizen to keep it so. Supporting this view in Klemm v. Davenport,
 
 supra,
 
 we said:
 

 “A ‘promise to pay’ is in no different situation when executed by an individual than when executed by a government entity. It is a serious matter, is not subject to the vicissitudes of fortune, and should be as scrupulously observed in the performance in the one instance as in the other. In times of stress and adversity individuals are often required to toil through years and exercise the most rigid self denial and economy to ‘pay’, even though the business engaged in proved to be a failure. A like course of conduct is not less incumbent on a governmental entity. The very foundation of our social and economic structure is confidence, and, while the demands of government on the taxpayers are burdensome, it is also true that society in turn is making unusual demands on government.
 

 The following cases support this vifew: County Commissioners v. King,
 
 supra;
 
 Rees v. City of Watertown, 19 Wall (U. S.) 107, 22 L. Ed. 72; Galena v. United States, 5 Wall (U. S.) 705, 18 L. Ed. 560; United States v. Jefferson County, Fed. Case 15472; State of Louisianna v. City of New Orleans, 102 U. S. 203, 26 L. Ed. 132; Coy v. City of Lyons, 17 la. 1, 85 Am. Dec. 539; Munday v. Rahway, 43 N. J. L. 338; Rahway v. Munday, 44 N. J. L. 395; City of East St. Louis v. Amy, 120 U.
 
 *1330
 
 S. 600, 30 L. Ed. 798, 7 Sup. Ct. 739; Hicks v. Cleveland, 106 Fed. 459; Padgett v. Post, 106 Fed. 600; Evans v. Yost, 255 Fed. 726; State ex rel. Evers v. Byrne, 32 Wash. 264, 73 Pac. R. 394; Tarver v. City of Tallapoosa, 17 Ala. 527; McQuillan:
 
 Municipal Corporations
 
 (2nd Ed.) Vol. 5, page 978.
 

 To uphold the City’s contention would lead to most disastrous consequences. It would mean that a contract holder has nothing more than a bare abstract right which he has no power to enforce, in other words a right without a remedy, which is as if it were not. Without the remedy or means to enforce, a contract in law may be said not to exist and its obligation falls in the class of a mere social amenity, its enforcement resting solely on the whim and caprice of the obligor. If the obligor rather than Court is to adjudicate the question of when or whether or not the obligation of his contract, in the light of the statute controlling, may be enforced, then there is no such thing as th,e inviolability of contracts and the stain of repudiation is on every governmental entity in this State. Our credit and integrity at home and abroad would be destroyed and no worthy enterprise could borrow a dollar. The aggrevated effect of the boom, the fly quarantine, the hurricane and other misfortunes that have befallen us would not be comparable to the situation thus created. Addressing itself to this point in The Homestead Cases, 22 Gratton 266, 301, the Supreme Court of Virginia said:
 

 "No state and no people can have any real and enduring prosperity except where public faith and private faith are guarded by laws wisely administered and faithfully executed. The inviolability of contracts, public and private, is the foundation of all social progress and the corner stone of all the forms of civilized society where an enlightened system of jurisprudence
 
 *1331
 
 prevails. Under our system of government, it has been wisely placed under the protection of the Constitution of the United States, and there it rests, secure against all invasion.”
 

 It has also been urged that mandamus is not the proper remedy, to secure the relief here sought, such contention being predicated on the ground that it amounts to a suit to enforce a contract which cannot be done by mandamus. A brief history of the provision of our Constitution defining the jurisdiction of this Court will enlighten that contention.
 

 Section
 
 2
 
 of Article V of the Constitutions of 1838, 1861, and 1865 carried the following provision:
 

 “The Supreme Court, except in cases otherwise directed in this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the State, under such restrictions and regulations, not repugnant to this Constitution, as may from time to time, be prescribed by law; provided, that the said Court shall always have power to issue.writs of injunction, mandamus, quo warranto, habeas corpus, and such other remedial and original writs, as may be necessary to give it a general superintendence and control of all other courts. ’ ’
 

 Under this organic provision it was held that the jurisdiction of the Supreme Court of Florida was two-fold:
 

 “ * * * first, appellate jurisdiction proper, and, secondly, a general superintendence- and control of all other courts, and this by means of all appropriate, original, and remedial writs'known to the common law. No original proceeding can be instituted in this court, unless it be to exercise this power of superintendence
 
 *1332
 
 or control over some other court. The exception in the first clause of the section points to the power contained in the proviso, and this power the court would not have had from the mere .grant of ‘appellate jurisdiction only’.” Ex Parte White, 4 Fla. 165.
 

 Section 5, Article VI of the Constitution of 1868, though materially different from the foregoing, provided as follows:
 

 “The Supreme Court shall have appellate jurisdiction in all cases in equity, also in all cases of law in which is involved the title to or right of possession of real estate, or the legality of any tax, impost, assessment, toll, or municipal fine, or in which the demand or the value of the property in controversy exceeds three hundred dollars; also in all other civil cases not included in the general subdivisions of law and equity; also in all questions of law alone; in all criminal cases in which the offense charged amounts to felony. The Court shall have power to issue writs of mandamus, certiorari, prohibition, quo warranto, habeas corpus, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction. ’ ’
 

 Under this organic provision it was held that:
 

 “ * # * the jurisdiction of this Court is twofold—appellate jurisdiction proper, with power to issue all writs necessary to its full exercise, and original jurisdiction to issue the writs specified where they are the appropriate remedies.” State v. Gleason 12 Fla. 190. See also Bloxham v. Gibbs 13 Fla. 55.
 

 (Section 5 of Article VI of the Constitution of 1868 was amended in 1875. See page 64 McClellan’s Digest; page 4979 Compiled General Laws 1927, Annotated Edi
 
 *1333
 
 tion, page 190 Compact Edition. See State ex rel., Drew v. State Canvassing Board 16 Fla. 17.)
 

 Section 5, Article V of the Constitution of 1885 provides that:
 

 “The Supreme Court shall have appellate jurisdiction in all cases at law and in equity originating in circuit courts, and of appeals from the circuit courts in cases arising before judges of the county courts in matters pertaining to their probate jurisdiction and in the management of the estates of infants, and in cases of conviction of felony in the criminal courts, and in all criminal eases originating in the circuit courts. The Court shall have the power to issue writs of mandaimus, certiorari, prohibition, quo warranto, habeas corpus, and also all writs necessary or proper to the complete exercise of its jurisdiction.”
 

 In the Constitution of 1885 the word “appellate” immediately preceding the word “jurisdiction” in the last line as quoted is omitted. If the Constitution of 1868 authorized writs of mandamus, certiorari, prohibition, quo warranto, and habeas corpus to be issued by this Court in the exercise of its original jurisdiction as was held in Ex Parte White, supra, then the Constitution of 1885 by omitting the word “appellate” certainly gives to this Court authority to issue such writs in the exercise of its original jurisdiction. This view accords with the interpretation of that provision since its adoption. State ex rel., Lillienthal v. Deane 23 Fla. 121, 1 So. R. 698.
 

 A multitude of cases support the view that when a municipality is legally bound to levy a tax to pay judgments, warrants, bonds or other allowed or fixed indebtedness, or interest thereon, or to provide a sinking fund for payment
 
 *1334
 
 at a future day, mandamus will lie on relation of a person interested to compel performance of such a duty. Graham v. Folson 200 U. S. 248, 50 L. Ed. 464; Walkley v. Muscatine 6 Wall (U. S.) 481, 18 L. Ed. 930; Columbia Co. v. King
 
 supra;
 
 McQuillan:
 
 Municipal Corporations
 
 (2nd Ed.) Vol. 6, page 299 citing many cases; Cooley on
 
 Taxation
 
 (4th Ed.) Vol. 3, page 2050, Vol. 4, page 3190, citing many cases; Dillon:
 
 Municipal Corporations
 
 (5th Ed.) Vol. 4, page 2686 citing many cases. All of these authorities dispose of this question on the theory that the levy of the tax is a duty imposed by statute which like any other statutory or public duty may be enforced by mandamus. There seems to be no dissent from the rule and to multiply authorities would be a work of supererogation.
 

 We therefore conclude that Respondents, City Commission of Sanford, Florida, may be required by mandamus to levy a tax to pay the past due and current interest on its bonds and certificates of indebtedness as prayed for by the alternative writ, such amounts being well within the statutes defining their duty in the premises, and that the Mayor, City Clerk, Tax Assessor and Tax Collector of said City may be required to respond to the commands laid on them by the alternative writ, that the alleged poverty and misfortune of the people of Sanford is no defense to such a levy, that under the terms of the statute authorizing the levy there is no power or discretion in this Court to spread the said levy over a period of years and that the fact that suit's are pending in the United States District Court for the Southern District of Florida challenging the validity of the bonds brought in question is no ground for an abatement of the instant' suit.
 

 It follows that the demurrer to and motion to strike portions of the return to the alternative writ must be and
 
 *1335
 
 is hereby sustained and the motion for peremptory writ granted.
 

 Whitfield, Ellis, Strum, Brown and Buford, J. J., concur.